Susan Joyce **DASHER**, Plaintiff-Appellee,

v.

The **SUPREME COURT OF TEXAS,** Etc., et al., Defendants-Appellants.

Nos. 78–2616, 79–1253 and 79–2343.

United States Court of Appeals, Fifth Circuit.

Unit A

July 16, 1981.

Michael H. Corley, Sp. Asst. Atty. Gen., Hunton & Williams, Richmond, Va., for defendants-appellants.

* Judge of the United States Court of Claims, sitting by designation.

Gretchen E. Raatz, Mary C. Dunlap, Susan Joyce Dasher, Austin, Tex., for plaintiff-appellee.

Clyde O. Bowles, Jr., Bowles & Ward, Chicago, Ill., for amicus curiae Nat. Conference of Bar Examiners.

Before AINSWORTH, Circuit Judge, KUNZIG, Judge *, and RANDALL, Circuit Judge.

RANDALL, Circuit Judge:

In the spring of 1978, Susan Joyce Dasher, a California attorney, moved to Texas and began work as an assistant attorney general in the office of the Attorney General of the State of Texas. On April 26, 1978, Ms. Dasher filed a written application to take the Texas bar examination. Ms. Dasher's application was fully and properly completed and accompanied by the required letters of recommendation and fees. There was, however, one obstacle to Ms. Dasher's admission to the bar examination scheduled for July, 1978. The San Francisco Law School, from which Ms. Dasher had received her J.D. degree, was not on the list of law schools "approved" by the Supreme Court of Texas.

Under Texas law, the Texas Supreme Court has exclusive authority to grant licenses for the practice of law, Tex.Rev.Civ. Stat.Ann. art. 306 (Vernon Supp.1980). The Texas Supreme Court is also authorized by statute to "make such rules as in its judgment may be proper to govern eligibility for [the bar] examination." *Id.* The statute charges the Supreme Court with responsibility for prescribing the nature and extent of the law study an applicant must undertake before she or he is eligible to take the Texas bar examination. The statute provides, however, that "completion of prescribed study in an approved law school shall satisfy the law study requirements for taking the ... [bar] examination," *id.*, and defines an "approved law school" as one approved by the Texas Supreme Court.

In discharging its responsibilities under this statute, the Texas Supreme Court has adopted and published a compilation of rules. Rule V of the Rules Governing Admission to the Bar of Texas provides that in order to be eligible to take the Texas bar examination a candidate must have graduated from (or satisfied all requirements for graduation from) an approved law school or have completed 80 semester hours of study toward the LL.B. degree (or its equivalent) at an approved school. Rule VI of these rules sets forth the standards which the Texas Supreme Court applies in approving law schools. Rule VI provides, *inter alia*, that

"a law school which is either provisionally or fully approved by the American Bar Association shall prima facie be deemed to comply with these standards ...."

It is undisputed in this case that the San Francisco Law School was never approved by the American Bar Association or by the Texas Supreme Court.

Apparently, Ms. Dasher was aware, at the time she applied for admission to the bar exam, or very shortly thereafter, that her eligibility to sit for the examination was questionable. On May 9, 1978, Ms. Dasher's attorney wrote the Secretary of the Board of Law Examiners, the agency of the Supreme Court charged with responsibility for administering the Rules Governing Admission to the Bar and for administering and grading the Texas bar examination, inquiring whether Ms. Dasher would be admitted to the July, 1978 examination. On May 29, 1978, Ms. Dasher's attorney wrote the Chairman of the Board of Law Examiners, George Barrow, acknowledging that Ms. Dasher's alma mater, San Francisco Law School, did not appear either on the current list of schools approved by the Texas Supreme Court or on the ABA's roster of approved institutions. Counsel requested that the Board "in its discretion, grant a special exception and allow [Ms. Dasher] to take the Bar Exam based upon her meritorious legal attainments and experience." On May 30, 1978, Mr. Barrow responded that the Board would not admit Ms. Dasher to the July, 1978 bar examination. Mr.

Barrow explained that the Board did not construe Rule XII(h), which governs admission to practice of immigrant attorneys, to authorize the Board to waive the requirement of attendance at a "law school which has been accredited by the American Bar Association."

Ms. Dasher's counsel then filed a "Motion for Leave to File Petition" in the Texas Supreme Court. The motion stated that the petition for an exception to the court's rules regarding admission to the bar was an original proceeding within the exclusive jurisdiction of the Supreme Court and prayed that the petition for exception "be filed and that the cause be placed upon the docket, and that the petition be acted upon by the Court." The Board of Law Examiners filed a response opposing Ms. Dasher's request. The record reflects that the Texas Supreme Court did in fact place Ms. Dasher's petition on its docket. After considering the merits of Ms. Dasher's petition, however, the court, on July 19, 1978, denied her request for admission to the bar examination.

On the same day, Ms. Dasher filed a civil complaint in the United States District Court for the Western District of Texas. The complaint named as defendants the Supreme Court of the State of Texas and the Board of Law Examiners, and also Joe R. Greenhill and George T. Barrow, in their official capacities as Chief Justice of the Supreme Court and Chairman of the Board of Law Examiners, respectively. The complaint, grounded on 42 U.S.C. § 1983, alleged that the refusal of the Board and the Supreme Court to admit her to the Texas bar examination deprived her of due process and equal protection of the laws in violation of the fourteenth amendment. Specifically, the complaint and its supporting memorandum asserted that Mr. Barrow's statement that the Board required applicants to be graduates of ABA approved law schools improperly and retroactively altered the rules governing eligibility for the exam. Ms. Dasher argued that although the San Francisco Law School had never been formally approved by the Texas

Supreme Court or the ABA, the school substantially complied with the specific standards for law schools set forth in Rule VI(A) of the Rules Governing Admission to the Bar. Ms. Dasher urged that under Rule VI(B), which provides that "[t]he Supreme Court shall approve law schools which meet the standards" specified in VI(A), the Supreme Court was obligated to approve the San Francisco Law School and admit Ms. Dasher to the bar examination. The court's failure to do so, coupled with Mr. Barrow's statement that ABA approval was required, amounted, according to Ms. Dasher, to an arbitrary and capricious change in the rules, which had formerly permitted applicants to take the bar exam if they graduated from a school approved by either the ABA *or* by the Supreme Court. Ms. Dasher's complaint sought relief in the form of a temporary restraining order requiring that Ms. Dasher be admitted to the examination, scheduled to begin on July 26, 1978, a preliminary injunction enjoining the defendants from interfering with Ms. Dasher's admission to the exam and enjoining the defendants from taking any action to deprive her of admission to the bar on the same terms and conditions as any graduate of an approved law school. The complaint further requested a declaratory judgment "that the defendants Court and Board have an existent, clear legal duty to plaintiff to accredit and approve plaintiff's application for admission ... [and] a further duty not to treat plaintiff Dasher arbitrarily and capriciously."

On July 25, 1978, the district court granted Ms. Dasher's request for a temporary restraining order and directed that she be admitted to the examination on the following morning. Ms. Dasher was admitted to the exam on July 26, 1978, in compliance with the court's order. On that same day, the defendants filed an appeal in this court; we refused to stay the operation of the district court's order that Ms. Dasher be permitted to take the examination, but provided that after Ms. Dasher's examination was graded, her examination papers were to be sealed and deposited with the clerk of the district court and the results of her examination were not to be divulged. By later order of this court, Ms. Dasher's grade on the examination was released.

On October 25, 1978, Ms. Dasher filed a motion for summary judgment which was granted by the district court on January 18, 1979. The district court concluded that the Board of Law Examiners had altered the rules governing applications for the bar examination, after Ms. Dasher had made a timely application to take the exam, by imposing a requirement that applicants be graduates of an ABA accredited school. Because Ms. Dasher had not received adequate notice of these changes or a hearing, the district court concluded that the Board's action was violative of due process. The court concluded that since Ms. Dasher had received a passing score on the examination, the proper remedy for the defendants' constitutional violation was an order directing the Supreme Court of Texas to admit Ms. Dasher to the practice of law in Texas.

From this order, the defendants have brought this appeal. Among the arguments presented by the defendants on appeal is one which apparently was not raised or considered below. The defendants contend that the district court was without jurisdiction to entertain Ms. Dasher's § 1983 suit because the suit represented an effort to obtain review of a judicial decision of the Texas Supreme Court in a lower federal court in contravention of the United States Supreme Court's exclusive jurisdiction over such challenges established in 28 U.S.C. § 1257(3). An objection to a federal court's subject matter jurisdiction may, of course, be raised at any time. *City of Kenosha v. Bruno*, 412 U.S. 507, 93 S.Ct. 2222, 37 L.Ed.2d 109 (1973). Since we agree that the district court lacked jurisdiction to entertain Ms. Dasher's suit, we do not reach the merits of Ms. Dasher's constitutional claims.

A federal district court, as a court of limited original jurisdiction, lacks power to review, modify or nullify a final order of a state court. Nor can a party, aggrieved by a judicial decision of a state's highest

court, invest a lower federal court with such jurisdiction by clothing his or her grievance in the garb of § 1983 and alleging that the decision of the state court deprived him or her of constitutionally protected rights or interests. *Lampkin-Asam v. Supreme Court of Florida*, 601 F.2d 760 (5th Cir. 1979), *cert. denied*, 444 U.S. 1013, 100 S.Ct. 662, 62 L.Ed.2d 642 (1980); *Sawyer v. Overton*, 595 F.2d 252 (5th Cir. 1979); *Aris v. Big Ten Taxi Corp.*, 441 F.2d 536 (5th Cir. 1971). A party seeking relief from such an allegedly unconstitutional action by a state court may seek review in only one federal court—the United States Supreme Court.

Recognizing that the above statements are hornbook law, Ms. Dasher argues only that these maxims do not apply to the proceedings in which the Supreme Court of Texas denied her request for an exception to the requirements for taking the Texas bar exam. Ms. Dasher contends that her petition to the Texas Supreme Court was one for an "exception to the existing rules not a challenge to such rules" and that since she was requesting only "an administrative remedy, not a judicial determination," there was no case or controversy and no "final judgment" which could be reviewed through a writ of certiorari by the United States Supreme Court. The Supreme Court's grant of certiorari in a number of cases involving a state court's denial of an individual's application for admission to the bar casts serious doubt on the validity of this argument.

The Supreme Court's modern involvement with constitutional challenges to state standards for admission to the bar began with *In re Summers*, 325 U.S. 561, 65 S.Ct. 1307, 89 L.Ed. 1795 (1945), and in that case the Court explicitly considered the question whether the Illinois Supreme Court's denial of Summers' application for admission to the Illinois bar was a judgment entered in an Article III "case" or "controversy" which could be reviewed by the Supreme Court on a writ of certiorari. The Illinois Supreme Court took the position that a petition for admission to the bar "does not constitute a case or controversy but is a mere application for appointment as an officer of the

court" and thus, the Illinois court's denial of Summers' petition should be characterized as a "ministerial act" rather than a "judicial proceeding." *Id.* at 565–66, 65 S.Ct. at 1310. The United States Supreme Court disagreed.

> "A claim of present right to admission to the bar of a state and a denial of that right is a controversy. When the claim is made in a state court and a denial of the right is made by judicial order it is a case which may be reviewed under Article III of the Constitution when federal questions are raised and proper steps taken to that end, *in this Court*." *Id.* at 569, 65 S.Ct. at 1312. (emphasis added).

Although Ms. Dasher, at the time she submitted her petition to the Texas Supreme Court, did not claim, as Summers did, a "present right to admission to the bar," she did claim that she was, as of that time, entitled to be admitted to the bar examination and that she had, even as of that time, a right to be admitted to the practice of law on the same terms and conditions as other applicants if she passed the examination. For purposes of determining whether the proceedings of the Texas Supreme Court in denying Ms. Dasher's petition represent an adjudication of a case or controversy within the meaning of Article III, we think this is a distinction without a difference. The determinative inquiry in *Summers* was not the substantive character of the claim asserted, but the "nature and effect of the proceeding." The *Summers* court held that

> "[w]here relief is ... sought in a state court against the action of a committee, appointed to advise the court, and the court takes cognizance of the complaint ..., we think the consideration of the petition by the Supreme Court, the body which has authority itself by its own act to give the relief sought, makes the proceeding adversary in the sense of a true case or controversy." *Id.* at 567–68, 65 S.Ct. at 1311.

The Supreme Court has implicitly reaffirmed this holding in numerous cases since *Summers* by issuing writs of certiorari to various state supreme courts in order to

review individuals' claims that they had been unconstitutionally denied admission to the practice of law. *See Schware v. Board of Bar Examiners of New Mexico,* 353 U.S. 232, 77 S.Ct. 752, 1 L.Ed.2d 796 (1957) (certiorari to the Supreme Court of New Mexico); *Konigsberg v. State Bar of California,* 353 U.S. 252, 77 S.Ct. 722, 1 L.Ed.2d 810 (1957) (certiorari to the Supreme Court of California); *Konigsberg v. State Bar of California,* 366 U.S. 36, 81 S.Ct. 997, 6 L.Ed.2d 105 (1961) (certiorari to the Supreme Court of California); *Willner v. Committee on Character and Fitness,* 373 U.S. 96, 83 S.Ct. 1175, 10 L.Ed.2d 224 (1963) (certiorari to the Court of Appeals of New York); *In re Anastalpo,* 366 U.S. 82, 81 S.Ct. 978, 6 L.Ed.2d 135 (1961) (certiorari to the Supreme Court of Illinois); *Baird v. State Bar of Arizona,* 401 U.S. 1, 91 S.Ct. 702, 27 L.Ed.2d 639 (1971) (certiorari to the Supreme Court of Arizona); *In re Stolar,* 401 U.S. 23, 91 S.Ct. 713, 27 L.Ed.2d 657 (1971) (certiorari to the Supreme Court of Ohio).

The Supreme Court's holding in *Summers,* that decisions of a state court relating to admission of individual applicants to the bar of that state were "cases" subject to review by the Supreme Court, has served as a predicate for numerous decisions in the lower federal courts holding that district courts have no jurisdiction to review state court decisions in cases involving individuals' applications for admission to the state's bar. *See, e. g., Brown v. Board of Bar Examiners of State of Nevada,* 623 F.2d 605 (9th Cir. 1980) ("a state court's decision on an individual [bar] application may not be disturbed in an original suit in federal district court"); *Doe v. Pringle,* 550 F.2d 596 (10th Cir. 1976), *cert. denied,* 431 U.S. 916, 97 S.Ct. 2179, 53 L.Ed.2d 227 (1977) (district court lacks "subject matter jurisdiction to review a final order of the Colorado Supreme Court denying a *particular application for admission* to the Colorado Bar"); *Diaz-Buxo v. Trias Monge,* 593 F.2d 153 (1st Cir.), *cert. denied,* 444 U.S. 833, 100 S.Ct. 64, 62 L.Ed.2d 42 (1979) ("Where a final state court adjudication of matters relating to membership in a state bar has been had, the

only federal review available is in the Supreme Court by petition for certiorari").

■ The reasoning of *Summers* and the holdings in the cases cited above do not mean that lower federal courts are totally foreclosed from considering constitutional challenges to the rules or procedures employed by state courts in licensing members of the bar. Under 28 U.S.C. § 1343, district courts have original jurisdiction of actions seeking to remedy the deprivation of constitutional rights under color of state law. In an effort to avoid possible conflict between the teaching of *Summers* and its progeny and the jurisdiction granted to the district courts in § 1343, courts have made a distinction between two types of constitutional challenges which may be made to a state's bar admissions practices.

> "The first is a constitutional challenge to the state's general rules and regulations governing admission; the second is a claim, based on constitutional or other grounds, that the state has unlawfully denied a particular applicant admission." *Doe v. Pringle, supra* at 597.

In the former type of case, even though a state's general rules and procedures governing admission to the bar are interpreted and administered by the state's courts, *Summers* and its progeny interpose no obstacle to a district court's exercise of the original jurisdiction conferred upon it under § 1343. *See, e. g., Tyler v. Vickery,* 517 F.2d 1089 (5th Cir. 1975), *cert. denied,* 426 U.S. 940, 96 S.Ct. 2660, 49 L.Ed.2d 393 (1976) (decision on the merits of a class action on behalf of all black persons who had taken and failed the Georgia bar examination alleging that the examination system was unconstitutional on due process and equal protection grounds). By contrast, those cases presenting claims that a particular decision of a state court on an individual application for admission to the bar in some way violated the constitutional rights of the applicant may not properly be challenged by an original suit in federal district court.

■ The distinctions between these two types of cases may not always be clear cut

ones. An individual claim of injury will, of course, be necessary to give a person standing to assert that the rules and regulations, in their general application, are unconstitutional. It is not difficult, however, to determine the proper classification for this case. Ms. Dasher's claims are virtually identical to those presented in *Brown v. Board of Bar Examiners of the State of Nevada, supra*. In that case, the Nevada Board of Bar Examiners denied Brown admission to the Nevada bar examination because she did not graduate from an accredited law school, as required by the rules of the Nevada Supreme Court. Brown petitioned the Nevada Supreme Court for a waiver of this requirement, but her petition was denied. Thereafter, Brown filed a § 1983 suit against the Board and the Nevada Supreme Court in federal district court alleging that the requirements for admission to the bar exam had been applied "arbitrarily and capriciously" in her case, in violation of the due process clause. The Court of Appeals for the Ninth Circuit held that although a constitutional challenge to the general administration of the Nevada Supreme Court's rules as "arbitrary and capricious" would be cognizable in a federal district court, Brown's claim, despite having "superficial indicia of a general constitutional attack," *Brown, supra* at 610, was not. Like Brown, Ms. Dasher does not challenge the constitutionality of Texas' requirement of graduation from an "approved" or "accredited" law school as a prerequisite to admission to the bar. The gist of Ms. Dasher's complaint is the manner in which the rule was interpreted and applied in her case and the adverse effect of the rule upon her. Ms. Dasher requested only personal relief—injunctive relief admitting her to the bar exam and declaratory relief admitting her to the bar if she passed. No general injunctive or declaratory relief applicable to anyone else was requested. Ms. Dasher's federal court suit was clearly designed solely to vindicate her individual claim that she had been wrongfully denied admission to the exam, a claim which she had unsuccessfully urged in proceedings before the Texas Supreme Court.

Such a suit, although couched in terms of a § 1983 complaint, is essentially an effort to appeal the adverse determination of the state court; a federal district court has no jurisdiction over such a proceeding.

■ Ms. Dasher urges that *Ktsanes v. Underwood*, 552 F.2d 740 (7th Cir.), *aff'd on rehearing*, 560 F.2d 790, *cert. denied*, 435 U.S. 933, 98 S.Ct. 1508, 55 L.Ed.2d 530 (1977), would support a conclusion that the district court was not without jurisdiction to entertain her suit. We find *Ktsanes* distinguishable from this case in two critical respects. First, in *Ktsanes*, the Seventh Circuit concluded that in denying an applicant's request for an exception to the rules establishing qualifications for the Illinois bar, the Illinois Supreme Court had acted in an administrative capacity rather than a judicial one. Thus, there was no case or controversy in the state court which could have been reviewed through writ of certiorari. In Ms. Dasher's case, however, we do not think it can be gainsaid that the Texas Supreme Court in considering, and ultimately denying, her petition acted as anything other than a judicial body. The Texas Supreme Court proceedings bore the form as well as the substance of judicial proceedings. Ms. Dasher's petition was formally placed on the court's docket, as evidenced by the docket number which appears on the papers filed with the court. The court's decision took the form of a formal order entered on the record of the court acting as such. *Summers* admonishes us that the form of the proceedings is not determinative and that a court's actions may be deemed "judicial" even in the absence of the usual trappings associated with such proceedings. Where, as here, however, a court renders a decision in the context of an adversary proceeding and in doing so follows the procedures and forms characteristic of judicial acts, *e. g.*, calendaring and docketing disputes, and issuing orders, rather than some less formal type of response to the question presented, we cannot conclude that the court was doing anything other than exercising its judicial function by deciding a case or controversy.

*Ktsanes* is also different from the case before us here because Ktsanes' federal court complaint apparently presented a constitutional challenge to a general rule governing admission to the bar—"[t]his is . . . a case, in which the rule 'laying down general conditions' is claimed to be discriminatory." *Ktsanes*, 552 F.2d at 743. The *Ktsanes* court, thus, did not reject the distinction, recognized in *Doe*, between general challenges to the rules themselves on constitutional grounds, and claims involving only individual grievances; it merely concluded that Ktsanes' complaint fell into the former rather than the latter category and was thus properly within the original jurisdiction of a federal district court. As we explained above, we think Ms. Dasher's complaint is properly placed in the second category.

Since we reverse the judgment of the district court, Ms. Dasher is not a prevailing party entitled to attorneys fees under 42 U.S.C. § 1988 and we need not consider her cross-appeal requesting an increase in the amount of attorneys fees awarded her by the district court.

The judgment is REVERSED; the injunction is VACATED; and the case is REMANDED with instructions that the complaint be DISMISSED.