Susan Joyce DASHER, Plaintiff-Appellee,

v.

The SUPREME COURT OF TEXAS, Etc., et al., Defendants-Appellants.

Nos. 78–2616, 79–1253 and 79–2343.

United States Court of Appeals, Fifth Circuit.*

Unit A

Oct. 13, 1981.

* Former Fifth Circuit case, Section 9(1) of Public Law 96–452—October 14, 1980.

**1046**

Michael H. Corley, Sp. Asst. Atty. Gen., Hunton & Williams, Richmond, Va., for defendants-appellants.

Clyde O. Bowles, Jr., Bowles & Ward, Chicago, Ill., for amicus curiae National Conference of Bar Examiners.

Gretchen E. Raatz, Austin, Tex., Mary C. Dunlap, San Francisco, Cal., for plaintiff-appellee.

Susan Joyce Dasher, Austin, Tex., pro se.

## ON PETITION FOR REHEARING

Before AINSWORTH, Circuit Judge, KUNZIG, Judge[**], and RANDALL, Circuit Judge.

RANDALL, Circuit Judge:

On petition for rehearing by this panel, appellee, Susan Joyce Dasher, seeks reconsideration of our opinion in *Dasher v. Supreme Court of Texas*, 650 F.2d 711 (5th Cir. 1981). After careful consideration of Ms. Dasher's petition, we have concluded that the arguments in her petition lack merit; however, in the course of reviewing the record in this case as we considered Ms. Dasher's petition, we have ourselves discerned an error in our previous opinion which necessitates that we alter our original conclusion that the district court lacked jurisdiction to entertain Ms. Dasher's petition and that we consider the merits of the case on appeal. Therefore, Ms. Dasher's petition for rehearing is granted, the original opinion in this case is withdrawn and the following is substituted. We begin anew with a statement of the facts.

## I. FACTS

In the spring of 1978, Susan Joyce Dasher, a California attorney who had practiced law in that state for approximately three years, moved to Texas and began work as an assistant attorney general in the office of the Attorney General of the State of Texas. On April 26, 1978, Ms. Dasher filed a written application with the State Board of Law Examiners to take the Texas bar examination. Ms. Dasher's application was fully and properly completed and accompanied by the required letters of recommendation and fees. There was, however, one obstacle to Ms. Dasher's admission to the bar examination scheduled for July, 1978. The San Francisco Law School, from which Ms. Dasher had received her J.D. degree, was not on the list of law schools "approved" by the Supreme Court of Texas.

Under Texas law, the Texas Supreme Court has exclusive authority to grant licenses for the practice of law, Tex.Rev.Civ. Stat.Ann. art. 306˘ (Vernon Supp. 1980). The Texas Supreme Court is also authorized by statute to "make such rules as in its judgment may be proper to govern eligibility for [the bar] examination." *Id.* The statute charges the Supreme Court with responsibility for prescribing the nature and extent of the law study an applicant must undertake before she or he is eligible to take the Texas bar examination. The statute provides, however, that "completion of prescribed study in an approved law school shall satisfy the law study requirements for taking the . . . [bar] examination," *id.*, and defines an "approved law school" as one approved by the Texas Supreme Court.

In discharging its responsibilities under this statute, the Texas Supreme Court has adopted and published a compilation of rules. Rule XII of the Rules Governing Admission to the Bar of Texas governs the admission of attorneys from other jurisdictions. Under the provisions of this rule, attorneys licensed to practice and actively engaged in practice in another state for at least seven years may, in the discretion of the Board, be admitted to the bar without taking the bar examination or upon successful completion of a short-form examination. The rules make no provision for the admission of immigrant attorneys who have not

[**] Judge of the United States Court of Claims, sitting by designation.

practiced elsewhere for the required period without successful completion of the regular bar examination. Rule XII(h) provides that:

> The Board, in its discretion, may admit to examination upon all subjects prescribed for the regular examination any attorney who has been admitted to practice law in another jurisdiction and *who meets all the other requirements of these rules,* including three (3) months' residence in Texas and the prescribed pre-legal education, but who has not practiced under the conditions hereinabove set forth for the required length of time to be admitted as an immigrant attorney hereunder. (emphasis added)

Among the other requirements of the Rules Governing Admission to the Bar of Texas are those contained in Rule V which provides that in order to be eligible to take the Texas bar examination a candidate must have graduated from (or satisfied all requirements for graduation from) a law school approved by the Texas Supreme Court or have completed 80 semester hours of study toward the LL.B. degree (or its equivalent) at an approved school. Rule VI(A) of these rules sets forth the standards which the Texas Supreme Court applies in approving law schools. Rule VI(A) provides, *inter alia,* that

> "a law school which is either provisionally or fully approved by the American Bar Association shall prima facie be deemed to comply with these standards . . . ."

The rules do not, however, limit approval by the Texas Supreme Court to law schools accredited by the American Bar Association. Rule VI(B) prescribes procedures relative to the approval of law schools. It is undisputed in this case that the San Francisco Law School was never approved by the American Bar Association or by the Texas Supreme Court.

Apparently, Ms. Dasher was aware, at the time she applied for admission to the bar exam, or very shortly thereafter, that her eligibility to sit for the examination was questionable.[1] On May 9, 1978, Ms. Dasher's attorney wrote the Secretary of the Board of Law Examiners, the agency of the Supreme Court charged with responsibility for administering the Rules Governing Admission to the Bar and for administering and grading the Texas bar examination, inquiring whether Ms. Dasher would be admitted to the July, 1978 examination. On May 29, 1978, Ms. Dasher's attorney wrote the Chairman of the Board of Law Examiners, George T. Barrow, acknowledging that Ms. Dasher's alma mater, San Francisco Law School, did not appear either on the current list of schools approved by the Texas Supreme Court or on the ABA's roster of approved institutions. Counsel requested that the Board "in its discretion, grant a special exception and allow [Ms. Dasher] to take the Bar Exam based upon her meritorious legal attainments and experience." On May 30, 1978, Mr. Barrow responded that the Board would not admit Ms. Dasher to the July, 1978 bar examination. Mr. Barrow explained that the Board did not construe Rule XII(h) to authorize the Board to waive the requirement of attendance at a "law school which has been accredited by the American Bar Association."

Ms. Dasher's counsel then filed a "Motion for Leave to File Petition" in the Texas Supreme Court. The motion stated that the petition for an exception to the court's rules regarding admission to the bar was an original proceeding within the exclusive jurisdiction of the Supreme Court and prayed that the petition for exception "be filed and that the cause be placed upon the docket, and that the petition be acted upon by the Court." The Board of Law Examiners filed a response opposing Ms. Dasher's

---

1. We note that the San Francisco Law School candidly informs its students that although the school is accredited by the State of California and its graduates are permitted to take the California bar, "[a] student intending to practice outside of California should carefully investigate the requirements and qualifications for admission to the Bar of the state in which he may be interested in practicing." Sixty-Eighth Annual Announcement of the San Francisco Law School, 1977–78, p.9.

request. On July 19, 1978, the court overruled Ms. Dasher's motion, thereby denying her request for admission to the bar examination.

On the same day, Ms. Dasher filed a civil complaint in the United States District Court for the Western District of Texas. The complaint named as defendants the Supreme Court of the State of Texas and the Board of Law Examiners, and also Joe R. Greenhill and George T. Barrow, in their official capacities as Chief Justice of the Supreme Court and Chairman of the Board of Law Examiners, respectively. The complaint, grounded on 42 U.S.C. § 1983, alleged that the refusal of the Board and the Supreme Court to admit her to the Texas bar examination deprived her of due process and equal protection of the laws in violation of the fourteenth amendment. Specifically, the complaint and its supporting memorandum asserted that Mr. Barrow's statement that the Board required applicants to be graduates of ABA approved law schools improperly and retroactively altered the rules governing eligibility for the exam. Ms. Dasher argued that although the San Francisco Law School had never formally been approved by the Texas Supreme Court or the ABA, the school met the specific standards for law schools set forth in Rule VI(A) of the Rules Governing Admission to the Bar. Ms. Dasher urged that under Rule VI(B), which provides that "[t]he Supreme Court shall approve law schools which meet the standards" specified in VI(A), the Supreme Court was obligated to approve the San Francisco Law School and admit Ms. Dasher to the bar examination. The court's failure to do so, coupled with Mr. Barrow's statement that ABA approval was required, amounted, according to Ms. Dasher, to an arbitrary and capricious change in the rules, which had formerly permitted applicants to take the bar exam if they graduated from a school approved by the Supreme Court even though that school might not be ABA accredited. Ms. Dasher's complaint sought relief in the form of a temporary restraining order requiring that Ms. Dasher be admitted to the examination, scheduled to begin on July 26,

1978, a preliminary injunction enjoining the defendants from interfering with Ms. Dasher's admission to the exam and enjoining the defendants from taking any action to deprive her of admission to the bar on the same terms and conditions as any graduate of an approved law school. The complaint further requested a declaratory judgment "that the defendants Court and Board have an existent, clear legal duty to plaintiff to accredit and approve plaintiff's application for admission ... [and] a further duty not to treat plaintiff Dasher arbitrarily and capriciously."

On July 25, 1978, the district court granted Ms. Dasher's request for a temporary restraining order and directed that she be admitted to the examination on the following morning. Ms. Dasher was admitted to the exam on July 26, 1978, in compliance with the court's order. On that same day, the defendants filed an appeal in this court; we refused to stay the operation of the district court's order that Ms. Dasher be permitted to take the examination, but provided that after Ms. Dasher's examination was graded, her examination papers were to be sealed and deposited with the clerk of the district court and the results of her examination were not to be divulged. By later order of this court, Ms. Dasher's grade on the examination was released.

On October 25, 1978, Ms. Dasher filed a motion for summary judgment which was granted by the district court on January 18, 1979. The district court concluded that the Board of Law Examiners had altered the rules governing applications for the bar examination, after Ms. Dasher had made a timely application to take the exam, by imposing a requirement that applicants be graduates of an ABA accredited school. Because Ms. Dasher had not received adequate notice of these changes or a hearing, the district court concluded that the Board's action was violative of due process. The court concluded that since Ms. Dasher had received a passing score on the examination, the proper remedy for the defendants' constitutional violation was an order directing the Supreme Court of Texas to admit Ms. Dasher to the practice of law in Texas.

## II. ISSUES RAISED ON APPEAL AND ON REHEARING—THE JURISDICTIONAL PROBLEM

On appeal from the district court's order granting Ms. Dasher admission to the Texas bar, the state presented to this panel a jurisdictional argument which was not raised or considered below. The state contended that the district court was without jurisdiction to entertain Ms. Dasher's § 1983 suit because the suit represented an effort to obtain review of a judicial decision of the Texas Supreme Court in a lower federal court in contravention of the United States Supreme Court's exclusive jurisdiction over such challenges established in 28 U.S.C. § 1257(3). Since an objection to a federal court's subject matter jurisdiction may be raised at any time, *City of Kenosha v. Bruno*, 412 U.S. 507, 93 S.Ct. 2222, 37 L.Ed.2d 109 (1973), we considered the state's argument and, in our original opinion, we found it to be a meritorious one.

Under 28 U.S.C. § 1257(3), the United States Supreme Court has jurisdiction to review, by writ of certiorari,

Final judgments or decrees rendered by the highest court of a State in which a decision could be had .... where any title, right, privilege or immunity is specially set up or claimed under the Constitution...."

In a case involving an applicant for admission to the Illinois bar, *In re Summers*, 325 U.S. 561, 65 S.Ct. 1307, 89 L.Ed. 1795 (1945), the Supreme Court explicitly considered the question whether the Illinois Supreme Court's denial of Summers' application for admission to the Illinois bar was a judgment entered in an Article III "case" or "controversy" which could be reviewed by the Supreme Court on a writ of certiorari pursuant to this statutory provision. The Illinois Supreme Court took the position that a petition for admission to the bar "does not constitute a case or controversy but is a mere application for appointment as an officer of the court" and thus argued that the Illinois court's denial of Summers' petition should be characterized as a "ministerial act" rather than a "judicial proceed-

ing." *Id.* at 565–66, 65 S.Ct. at 1310. The United States Supreme Court disagreed. The Court held that although Summers' petition requesting that the Illinois Supreme Court overrule the adverse decision of the state bar association's committee on character and fitness had not formally been placed on the court's docket and had been denied not by a formal entry of judgment but by an informal letter from the chief justice of the court, the presentation of the claim to the court and the court's official denial of the request constituted a case or controversy susceptible of review in the United States Supreme Court. Since *Summers* the Court has, on numerous occasions, implicitly reaffirmed this holding by issuing writs of certiorari to various state supreme courts in order to review individuals' claims that they had been unconstitutionally denied admission to the practice of law. *See Schware v. Board of Bar Examiners of New Mexico*, 353 U.S. 232, 77 S.Ct. 752, 1 L.Ed.2d 796 (1957) (certiorari to the Supreme Court of New Mexico); *Konigsberg v. State Bar of California*, 353 U.S. 252, 77 S.Ct. 722, 1 L.Ed.2d 810 (1957) (certiorari to the Supreme Court of California); *Konigsberg v. State Bar of California*, 366 U.S. 36, 81 S.Ct. 997, 6 L.Ed.2d 105 (1961) (certiorari to the Supreme Court of California); *Willner v. Committee on Character and Fitness*, 373 U.S. 96, 83 S.Ct. 1175, 10 L.Ed.2d 224 (1963) (certiorari to the Court of Appeals of New York); *In re Anastalpo*, 366 U.S. 82, 81 S.Ct. 978, 6 L.Ed.2d 135 (1961) (certiorari to the Supreme Court of Illinois); *Baird v. State Bar of Arizona*, 401 U.S. 1, 91 S.Ct. 702, 27 L.Ed.2d 639 (1971) (certiorari to the Supreme Court of Arizona); *In re Stolar*, 401 U.S. 23, 91 S.Ct. 713, 27 L.Ed.2d 657 (1971) (certiorari to the Supreme Court of Ohio).

The Supreme Court's holding in *Summers*, that decisions of a state court relating to admission of individual applicants to the bar of that state were "cases" subject to review by the Supreme Court, has served as a predicate for numerous decisions in the lower federal courts holding that district courts have no jurisdiction to review, under the guise of a § 1983 suit, state court deci-

sions in cases involving individuals' applications for admission to the state's bar. When an individual applicant for admission to the bar of a state has been denied admission to the bar by a state court decision that is subject to review in the United States Supreme Court by writ of certiorari under *Summers* and its progeny, courts of appeals have held that such an individual cannot forego the opportunity for certiorari and seek instead to present his claims in lower federal courts through the mechanism of a § 1983 suit because such suits constitute, in essence, an attempt to obtain appellate review of state court decisions in the federal district courts, which lack jurisdiction to entertain any such action. *See, e. g., Brown v. Board of Bar Examiners of State of Nevada*, 623 F.2d 605 (9th Cir. 1980) ("a state court's decision on an individual [bar] application may not be disturbed in an original suit in federal district court"); *Doe v. Pringle*, 550 F.2d 596 (10th Cir. 1976) *cert. denied*, 431 U.S. 916, 97 S.Ct. 2179, 53 L.Ed.2d 227 (1977) (district court lacks "subject matter jurisdiction to review a final order of the Colorado Supreme Court denying a *particular application for admission* to the Colorado Bar"); *Diaz-Buxo v. Trias Monge*, 593 F.2d 153 (1st Cir.), *cert. denied*, 444 U.S. 833, 100 S.Ct. 64, 62 L.Ed.2d 42 (1979) ("Where a final state court adjudication of matters relating to membership in a state bar has been had, the only federal review available is in the Supreme Court by petition for certiorari").

Our original opinion concluded that Ms. Dasher's § 1983 suit was barred by this rule. On petition for rehearing, Ms. Dasher has argued that this rule should not be applied to bar her suit because, in essence, the Supreme Court of Texas never considered the merits of her case and never issued a final judgment which was a necessary prerequisite to the availability of review in the United States Supreme Court. Ms. Dasher

takes exception to the statement, contained in our previous opinion, that the Texas Supreme Court placed her petition on its docket and that "[a]fter considering the merits of Ms. Dasher's petition ... the court ... denied her request for admission to the bar examination." Ms. Dasher insists that the Texas Supreme Court never placed the petition itself on the docket and never considered the merits of her petition for an exception because it overruled her motion for leave to file the petition. Ms. Dasher contends that since the court did not examine and determine the merits of the petition, she could not have sought certiorari in the United States Supreme Court and therefore, she was not precluded from filing suit in federal district court.

In the Texas Supreme Court, Ms. Dasher proceeded under Rule 474 of the Texas Rules of Civil Procedure.[2] This rule provides that an original proceeding in that court is properly commenced by delivering a "Motion for Leave to File" the action, a verified "Petition" setting forth the nature and grounds of the relator's (the petitioner's) claim for relief and a brief in support of the petition to the clerk of the court. The rule further provides that:

> If the court is of the tentative opinion that relator is entitled to the relief sought, the motion for leave to file will be granted, the petition filed, and the cause placed upon the docket. Otherwise the motion will be overruled.

We think the language of the rule makes clear that in making a determination whether to grant or overrule the motion for leave to file, the court does not examine only the motion, but considers the merits of the petition and brief in support thereof as well. There is no indication in the record of the proceedings in the Texas Supreme Court that Ms. Dasher's motion and petition

---

2. The Rules Governing Admission to the Bar do not prescribe a procedure for judicial review of decisions by the Board of Law Examiners except in cases involving adverse determinations of an applicant's character or fitness. Actions of the Board of Law Examiners are exempted from the general procedures for judicial review

of administrative decisions set forth in the Texas Administrative Procedures Act, Tex.Rev.Civ. Stat.Ann. art. 6252–13a (Vernon Supp. 1980). Rule 474 authorizes the Supreme Court to entertain original proceedings seeking writs of mandamus and other extraordinary writs.

faltered for lack of jurisdiction or for failure to comply with any state procedural rules. The Texas Supreme Court did not "dismiss" her motion—the customary disposition of matters over which the court lacks jurisdiction or which fail to comply with a procedural requirement, *see* Tex.R.Civ.P. 483; the court "overruled" her motion, a disposition which, according to the language of Rule 474 reflects an assessment of the merits. We cannot agree therefore with Ms. Dasher's argument that she was precluded from seeking certiorari because the Texas Supreme Court had made no ruling on the merits of her case which could constitute a final judgment within the meaning of 28 U.S.C. § 1257(3).

In the course of examining Ms. Dasher's petition for rehearing, we have had occasion to reexamine the record of the proceedings in the Texas Supreme Court and in so doing we have discovered that there was, in fact, an obstacle to Ms. Dasher's seeking a writ of certiorari from the United States Supreme Court following the Texas Supreme Court's overruling of her motion, although this obstacle is one which Ms. Dasher never brought to our attention in her brief, oral argument or petition for rehearing. Our review of the state court record in this case has revealed that in the motion and petition she submitted to the Texas Supreme Court, Ms. Dasher did not raise the federal constitutional claim she later asserted in the district court. In the proceedings before the Texas Supreme Court, Ms. Dasher presented only two basic arguments: first, that the language of Rule VI(A) requires the Supreme Court to approve a law school which complies with the standards prescribed therein, that the San Francisco Law School met these standards and must therefore be deemed an approved law school and, that as a graduate of an approved law school she was entitled to be admitted to the bar examination; and second, that in light of Ms. Dasher's professional accomplishments, the court should temporarily approve the San Francisco Law School for the limited purpose of allowing Ms. Dasher to take the Texas bar examination. The record gives no indication that Ms. Dasher asserted the federal constitutional claims which are the basis of her § 1983 action—that the denial of her application for admission to the bar examination deprived her of a constitutionally protected liberty and property interest in pursuing the practice of law in Texas, constituted a violation of equal protection and infringed upon her constitutionally protected right to travel—in the Texas Supreme Court. Since 28 U.S.C. § 1257(3) authorizes the Supreme Court to review only judgments in state court cases in which a federal issue was raised and adjudicated, 12 J. Moore, H. Bendix and B. Ringle, *Moore's Federal Practice* ¶ 505.01 (2nd ed. 1980), it is apparent that Ms. Dasher's case could not have been reviewed on a writ of certiorari from the United States Supreme Court following the Texas Supreme Court's denial of her motion. Since Ms. Dasher's § 1983 complaint states claims for relief grounded in federal constitutional rights, claims which were not presented to the Texas Supreme Court, her § 1983 suit does not constitute an impermissible effort to seek review of a state court judgment in a lower federal court.[3] We therefore turn to consider the merits of the state's appeal from the district court's order that she be admitted to the Texas bar.

## III. DIFFERENT FLIGHT—SAME DESTINATION

■ Although we have now concluded that in our original opinion we boarded the wrong flight when we reversed the district court on jurisdictional grounds, *see Sawyer v. Overton*, 595 F.2d 252 (5th Cir. 1979) (panel concluded that Mr. Sawyer had "boarded the wrong flight" when he filed a § 1983 suit in federal district court seeking reversal of state court judgment which

---

3. Since there is no established procedure in Texas for appealing an adverse decision of the Board of Law Examiners with respect to an application for admission to the bar (except as reflected in note 2, *supra*), we need not consider whether there is any necessity for Ms. Dasher, as a prerequisite to filing suit in federal court under 42 U.S.C. § 1983, to exhaust any such procedure.

**1052**

could have been reviewed in the Supreme Court), we find, upon taking the proper course of reviewing the merits in this case, that we reach the same destination—the judgment of the district court must be reversed.

The district court granted summary judgment in favor of Ms. Dasher on the basis of the following findings: (1) that at the time Ms. Dasher applied to take the Texas bar exam, there was no requirement that an applicant be a graduate of a law school accredited by the ABA in order to sit for the Texas exam, only a requirement that the applicant be a graduate of a school approved by the Texas Supreme Court; (2) that Mr. Barrow's letter of May 30, 1978 effected a change in the rules governing eligibility for the exam by imposing a requirement of graduation from an ABA accredited school; (3) that this change adversely affected the liberty and property interests of Ms. Dasher; and (4) that Ms. Dasher was deprived of procedural due process because she was not given notice or an opportunity to be heard before this change was made. Our review of the record in this case has left us firmly convinced that the district court's finding that Mr. Barrow's letter changed the bar admission rules is clearly erroneous. We further conclude that even if we were to assume that Mr. Barrow's letter altered the rules, Ms. Dasher was in no way adversely affected by such a change because the San Francisco Law School did not meet the educational standards prescribed in Rule VI(A) and therefore had no entitlement to approval from the Texas Supreme Court.

Ms. Dasher claims that the rules governing admission to the Texas bar were changed by Mr. Barrow's May 30, 1978 letter to Ms. Dasher's counsel in which Mr. Barrow stated:

The Board construes Rule XII(h), particularly the portion, "... and who meets all other requirements of these rules ..." as requiring graduation from a law school which has been accredited by the American Bar Association.

Ms. Dasher alleges and the district court found that this statement effected a change in the requirements of Rule V which had provided only that an applicant must be a graduate of a law school approved by the Texas Supreme Court. We cannot agree that this statement changed the rules.

Ms. Dasher does not dispute the defendants' assertion that at the time this letter was written the list of schools "approved" by the Texas Supreme Court was coextensive with the list of ABA accredited schools. In other words, there were no schools on the Texas Supreme Court's "approved" list which were not also ABA accredited. Therefore, as a practical matter, in order to meet the requirements of Rule XII(h) which incorporated the requirements of Rule V, an immigrant attorney who had practiced for less than seven years must have graduated from a law school accredited by the ABA. Under these circumstances it was neither unreasonable nor inaccurate for Mr. Barrow to state that the Board construed Rule XII(h) to involve a requirement of attendance at a school approved by the ABA. Viewed in context, Mr. Barrow's statement was nothing more than a shorthand reference to the fact that the only law schools approved by the Texas Supreme Court were schools accredited by the ABA.

There is simply nothing in the record to support an inference that at the time Mr. Barrow wrote this letter or at the time Ms. Dasher received it, this statement was intended by Mr. Barrow or understood by Ms. Dasher to state a change in the rules governing admission to the Texas bar. Following the letter both Ms. Dasher and Mr. Barrow acted as though the rule prescribing approval by the Texas Supreme Court continued to apply. Ms. Dasher's subsequent motion and petition filed with the Texas Supreme Court were premised upon the argument that under Rule VI the court was authorized (indeed, according to Ms. Dasher, required) to approve the San Francisco Law School, even though the school was not accredited by the ABA. Ms. Dasher never suggested to the Texas Supreme Court that Mr. Barrow's letter contained an erroneous construction of Rule XII(h) or Rule VI or

an impermissible alteration of either rule. In the Board of Law Examiners' statement in opposition to Ms. Dasher's motion, which was signed by Mr. Barrow, the Board in no way suggested that because the San Francisco Law School was not ABA-approved the Texas Supreme Court could not approve it. Indeed, the Board's statement acknowledged the continued vitality of the rule which allows the Supreme Court to approve law schools meeting certain criteria, regardless of their ABA status, and argued only that the school itself, not an individual graduate thereof, was the proper party to seek such approval from the court. The record thus gives no indication that the statement quoted above from Mr. Barrow's May 30, 1978 letter to Ms. Dasher reflected an effort on the part of the Board to alter the terms of Rule VI at that time so as to deny law schools not accredited by the ABA the right to seek independent approval by the Texas Supreme Court. Nothing in Ms. Dasher's conduct in the period immediately following receipt of the letter indicates that *she* thought this statement changed the rules; her after-the-fact contention in federal court that this statement effectively altered the rules governing admission to the Texas bar in the midst of her effort to take the bar exam is nothing more than a frivolous, post-hoc, semantic argument.

Even if we were to concur in the district court's finding that the rules governing approval of law schools were altered by Mr. Barrow's statement, we would be forced to disagree with the district court's determination that this change adversely affected Ms. Dasher. As we noted above it is undisputed in this case that the San Francisco Law School has never been approved either by the Texas Supreme Court or by the ABA. Under the rules in effect at the time she submitted her application for the bar examination, Ms. Dasher was, therefore, clearly ineligible to sit for the exam. Thus, even if the rules were later changed to impose a requirement of ABA approval, Ms. Dasher was not prejudiced in any way by such a change. Ms. Dasher suggests that if such a rule change occurred, she was prejudiced because the change deprived her of the right to seek to have her law school approved by the Texas Supreme Court so that she could be admitted to the bar exam. Ms. Dasher argues that under the terms of Rule VI(B), the Supreme Court was required to approve the San Francisco Law School upon her request because the school complied with the standards set forth in Rule VI(A). We disagree.

As a preliminary matter, we note that although Rule VI(B)(4) specifically provides a mechanism whereby an unapproved school may seek approval on its own behalf, there is simply nothing in the Rules which suggests that an individual student or graduate of an unapproved school may personally initiate proceedings seeking to have the school approved. We note further that even if the rules were somehow construed to permit a procedure whereby an individual student or graduate could seek to have his or her school approved by the court, Ms. Dasher's argument that the Texas Supreme Court would be required under its own rules to approve the San Francisco Law School is erroneous. Ms. Dasher contends that the language of Rule VI(B) stating that "The Supreme Court shall approve law schools which meet the standards specified in [Rule VI(A)]," means that the court has no discretion to refuse to approve schools meeting the standards set forth in part A of Rule VI; she also contends that the San Francisco Law School meets those standards and therefore reasons that if Rule VI has not been altered by Mr. Barrow's statement to require graduation from an ABA accredited school, she must be deemed a graduate of a law school entitled to be approved by the Texas Supreme Court. The most fundamental problem with this argument is that even if we were to agree with the proposition that the Supreme Court's rules require it to approve schools meeting the standards set forth in Rule VI(A), the court would be under no obligation to approve the San Francisco Law School because the record reflects that it falls short of meeting the educational standards prescribed in this rule in at least two respects. First, Rule VI(A)(6) requires that a law school in order

to be approved must admit only students who have completed at least 90 semester hours of college education with an average of "C" or better. The San Francisco Law School requires, as a condition for regular admission, only the completion of 60 semester hours and provides for the admission, as special students, of persons who have graduated from high school and completed an indefinite amount of college study—"a limited number of students ... who show graduation from an accredited high school with superior grades, some college-level subjects successfully completed, and outstanding business experience in a field related to law, may be admitted as candidates for a law degree." Sixty-Eighth Annual Announcement of the San Francisco Law School, 1977–78, p. 11. Second, the standards set forth in Rule VI(A) provide that in order to be approved a law school must require the successful completion of 84 semester hours of law school courses. The San Francisco Law School requires students to complete successfully only 80 hours in order to receive the J.D. degree. Thus, even a cursory review of the San Francisco Law School's catalog reveals that it fails to meet two of the more significant educational standards for approval by the Texas Supreme Court. It is clear, therefore, that under the rules in effect at the time Ms. Dasher applied to take the Texas bar examination, the San Francisco Law School was not formally approved by the Texas Supreme Court, nor did the school meet the standards required for approval. Thus, under either the "old" rules in effect at the time Ms. Dasher applied to take the exam, which required that an applicant for the bar exam be a graduate of a law school approved by the Texas Supreme Court and provided that law schools approved by the ABA were prima facie deemed to have met the standards for approval, or the "new" rules, which Ms. Dasher contends imposed a strict requirement of ABA approval, Ms. Dasher's position remains precisely the same—she is not entitled to sit for the Texas bar examination or to receive a license to practice law in the State of Texas because she did not graduate from a law

school whose graduates are eligible for these privileges under *either* version of these rules. Since the rules in effect at the time Ms. Dasher applied to take the exam in no way granted graduates of law schools not meeting the standards set forth in Rule VI(A) any right or entitlement to take the Texas bar exam or to be admitted to the Texas bar, any later change in these rules no matter how arbitrary or capricious cannot have unconstitutionally deprived Ms. Dasher of any liberty or property interest. *Leis v. Flynt*, 439 U.S. 438, 445, 99 S.Ct. 698, 702, 58 L.Ed.2d 717 (1979); *Board of Regents v. Roth*, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972); *Perry v. Sinderman*, 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972).

Before the district court, Ms. Dasher also claimed that the requirement of graduation from an approved law school created an unconstitutional irrebutable presumption, denied her equal protection and impermissibly infringed upon her constitutionally protected right to travel. On appeal, Ms. Dasher has not briefed these claims nor does she suggest that if we should find, as we have, that the district court's conclusion that her due process rights were violated was erroneous, the summary judgment in her favor should nevertheless be upheld on the basis of one of these other claims. We need not, therefore, discuss any of these other issues.

Since we reverse the judgment of the district court, Ms. Dasher is not a prevailing party entitled to attorneys fees under 42 U.S.C. § 1988 and we need not consider her cross-appeal requesting an increase in the amount of attorneys fees awarded her by the district court.

The judgment of the district court is RE-VERSED.