Charles Ben **HOWELL**,
Plaintiff-Appellant,

v.

**STATE BAR OF TEXAS, Et Al.,**
Defendants-Appellees.

No. 81–1069.

United States Court of Appeals,
Fifth Circuit.

May 3, 1982.

Rehearing Denied May 27, 1982.

---

McCorkle, Westerburg & Felton, Tom S. McCorkle, Dallas, Tex., for plaintiff-appellant.

Jerry L. Zunker, Austin, Tex., for defendants-appellees.

Steven D. Peterson, First Asst. Gen. Counsel, State Bar of Tex., Steven L. Lee, Austin, Tex., for State Bar of Texas, Franlin Jones, Jr. and Jerry L. Zunker.

Before CLARK, Chief Judge, THORN-BERRY and GARZA, Circuit Judges.

CLARK, Chief Judge:

Charles Ben Howell appeals the district court's dismissal of his civil rights action challenging the result of a state court disciplinary proceeding against him. We reverse the district court's dismissal and remand with instructions that the district court dispose of Howell's federal claims on their merits.

## I

On February 19, 1976, Howell filed a civil rights action pursuant to 42 U.S.C. §§ 1983–85 against the State Bar of Texas and three of its officers, seeking declaratory and injunctive relief to prevent his disbarment in a then-pending Texas court proceeding. On March 1, 1976, Howell moved for a preliminary injunction to enjoin prosecution of the state disciplinary action. The district court, in an order of crucial importance to this appeal, denied Howell's motion. That order, issued March 4, 1976, states:

> Plaintiff's Motion for Preliminary Injunction was brought before the Court on March 1, 1976. After having heard and considered the affidavits of plaintiff and the oral and written argument of counsel, this Court is of the opinion that the preliminary injunction should be denied. *Huffman v. Pursue, Ltd.*, 420 U.S. 592[, 95 S.Ct. 1200, 43 L.Ed.2d 482] (197[5] )[;] *Younger v. Harris*, 401 U.S. 37[, 91 S.Ct. 746, 27 L.Ed.2d 669] (1971). Plaintiff of course has the right to raise federal constitutional issues in federal court, should that prove necessary after the state court proceeding is completed. *England v. [Louisiana State] Board of Medical Examiners*, 375 U.S. 411[, 84 S.Ct. 461, 11 L.Ed.2d 440] (1964).[1]

On March 9, 1976, the State Bar of Texas moved under Rule 12, Fed.R.Civ.P., for dis-

---

1. The district court's order denying a preliminary injunction was affirmed by this court in an unpublished, per curiam opinion. *Howell v.* *State Bar of Texas*, 551 F.2d 861 (5th Cir. 1977) (citing Fifth Circuit Rule 21).

missal of Howell's action. No supporting brief was filed at the time.

After trial, Howell was found guilty of professional misconduct and reprimanded by the state court. While his appeal of the reprimand was pending before the Texas Court of Civil Appeals, Howell again moved the federal district court for a preliminary injunction. On April 15, 1977, the district court denied that motion and reaffirmed its March 4, 1976 order.[2] The Texas Court of Civil Appeals affirmed the judgment of the lower court in the disbarment action, a decision the Texas Supreme Court declined to review. *Howell v. State*, 559 S.W.2d 432 (Tex.Civ.App.1977—writ ref'd n. r. e.). Howell presented no federal constitutional claims in the state proceedings at either the trial or appellate level.[3]

On June 30, 1978, Howell returned to federal court, again seeking a preliminary injunction, this time to enjoin the Texas courts from giving effect to the judgment in the disbarment action. The district court granted Howell's motion on July 10, 1978. *Howell's* case then went through a one-and-a-half year period of dormancy until February 5, 1980, at which time the State Bar of Texas moved the court to dissolve the preliminary injunction and dismiss the action for want of prosecution. The district court denied the State Bar's motion to dismiss on February 25, 1980.

On April 22, 1980, the State Bar submitted a brief in support of the Rule 12 motion to dismiss that it had filed four years earlier. The State Bar's arguments were both jurisdictional and claim-related. Before ruling on the State Bar's motion to dismiss, the district court granted Howell's June 27, 1980 motion for leave to amend his complaint. Howell's second amended complaint, filed that same day, sought a declaration that the state disciplinary proceeding violated the United States Constitution and an injunction barring the State Bar and certain of its officers from enforcing the state judgment. On December 22, 1980, the district court dissolved its earlier preliminary injunction and granted the State Bar's Rule 12 motion to dismiss. The court's order failed to specify which ground or grounds it relied upon in granting the motion to dismiss. On January 13, 1981, the district court denied Howell's Rule 60(b) motion for reconsideration and cited *Kimball v. Florida Bar*, 632 F.2d 1283 (5th Cir. 1980), evidently as authority for its earlier grant of the Rule 12 motion to dismiss. The court's explicit reliance on *Kimball* leads us to conclude that the district court's dismissal was premised on jurisdictional grounds.

Howell now appeals the district court's grant of the State Bar's motion to dismiss and that court's denial of his reconsideration motion. We reverse the district court's dismissal and remand for disposition of Howell's federal constitutional claims on their merits.

II

■ The State Bar urges affirmance on the ground that Howell's suit seeks review of a state bar disciplinary action, review of which may be had exclusively in the United States Supreme Court. According to recent Fifth Circuit precedent, relied upon by the State Bar and the district court alike, the federal district courts are without jurisdiction to review state court disciplinary proceedings. *See Kimball v. Florida Bar, supra; Sawyer v. Overton*, 595 F.2d 252 (5th Cir. 1979). In *Sawyer* the attorney-plaintiff had been suspended by the Florida Supreme Court for three months. This court, in affirming the lower court's dismissal of the suit, opined that federal district courts

hold no warrant to review final judgments of the Florida Supreme Court. That power is reserved to the Supreme

---

2. Howell's appeal of the district court's order was dismissed for want of prosecution due to Howell's failure to file a brief. *Howell v. State Bar of Texas*, No. 77–1805 (5th Cir. Feb. 10, 1978).

3. We have not examined the entire state court record, but note that counsel for the State Bar conceded at oral argument that Howell did not raise his federal claims in the state disciplinary proceeding.

Court of the United States. Complaining of constitutional violations, Mr. Sawyer has cast his complaint in the form of a civil rights suit. What he seeks, however, is simply reversal of the state court judgment. . . . [T]he state proceedings . . . . could have been reviewed in the Supreme Court. Mr. Sawyer has boarded the wrong flight.

*Sawyer v. Overton*, 595 F.2d at 252 (citation omitted). But for an odd quirk in this case, *Sawyer* and *Kimball* would be controlling.

The rule of *Sawyer* and *Kimball* is necessarily premised on the availability of Supreme Court review of an offensive state court judgment.[4] Supreme Court review of Howell's disciplinary proceeding was impossible. Since Howell raised no federal claims in the Texas courts, due no doubt to the federal district court's assurance that he could return to federal court with his federal claims, Supreme Court review was unavailable. Our holding that the unavailability of Supreme Court review distinguishes this case from *Sawyer* and *Kimball* and obliges the district court to assume jurisdiction of Howell's action is mandated by a recent decision of this court.

In *Dasher v. Supreme Court of Texas*, 658 F.2d 1045 (5th Cir. 1981), the plaintiff brought a civil rights action in federal court challenging the Texas Supreme Court's decision not to admit her to the Texas bar as violative of the United States Constitution. The plaintiff had not raised any federal constitutional claims before the Texas Supreme Court, thus, rendering the state court's decision unreviewable by the United States Supreme Court under 28 U.S.C. § 1257(3).[5] This court noted that the availability of Supreme Court review "has served as a predicate for numerous decisions in the lower federal courts holding that district courts have no jurisdiction to review, under the guise of a § 1983 suit, state court decisions in cases involving individuals' applications for admission to the state's bar." *Dasher*, 658 F.2d at 1049–50. The court held that the plaintiff's suit was within the district court's jurisdiction since her federal claims were not presented in the state court and thus review was not available in the Supreme Court. *Id.* at 1051.[6]

■ Howell withheld his federal constitutional arguments from the state courts after the federal district court relegated him to the state system with a promise that he could return with his federal claims pursuant to *England v. Louisiana State Board of Medical Examiners*, 375 U.S. 411, 84 S.Ct. 461, 11 L.Ed.2d 440 (1964). The district court held out that promise erroneously, since the *England* reservation mechanism is an incident of *Pullman* abstention.[7] The district court more properly should have dismissed Howell's action and relegated him to the state courts to present all of his claims. Instead, the district court's citation to *England* assured Howell that he could

4. The unmentioned but obvious antecedent of *Sawyer* and *Kimball* is *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 44 S.Ct. 149, 68 L.Ed. 362 (1923), the case that spawned the so-called *Rooker* doctrine. *Rooker* held that only the Supreme Court can entertain jurisdiction of a proceeding to reverse or modify a state court judgment. *Id.* at 415–16, 44 S.Ct. at 150, 68 L.Ed. at 365. A panel of this court recently disputed that *Rooker* still stands, if it ever stood, for that proposition. *See Gresham Park Community Org. v. Howell*, 652 F.2d 1227, 1233–36 (1981). One recent commentator, while conceding that *Rooker* has been subjected to narrowing constructions, argues for its continuing vitality. *See* Chang, *Rediscovering the Rooker Doctrine: Section 1983, Res Judicata and the Federal Courts*, 31 Hastings L.J. 1337, 1344 & n.46, 1375–77 (1980). *But see Developments in the Law—Section 1983 and*

*Federalism*, 90 Harv.L.Rev. 1133, 1334 n.14 (1977).

5. 28 U.S.C. § 1257(3) provides, in part, that "[f]inal judgments . . . rendered by the highest court of a State . . . may be reviewed by the Supreme Court . . . where any title, right, privilege or immunity is specially set up or claimed under the Constitution."

6. The undropped shoe in *Dasher* is res judicata. The opinion does not mention res judicata and we presume that it was not pleaded in the district court as an affirmative defense. Thus, we note that in the ordinary case res judicata would apply where state and federal legal theories are "split" between two forums.

7. *Railroad Comm'n v. Pullman Co.*, 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941).

present his state claims in state court and then, if necessary, return to federal court with his federal claims. As a result, the Texas disbarment action could not have been reviewed by the United States Supreme Court. Thus, *Dasher* establishes that the district court has jurisdiction over Howell's federal claims.

### III

The State Bar, as an alternative argument for affirmance, claims that res judicata forbids litigation of claims in federal court that might have been litigated in state court. While we agree that in the normal case res judicata would apply, the facts of this case once again fall outside of the general rule.

*Allen v. McCurry*, 449 U.S. 90, 101 S.Ct. 411, 66 L.Ed.2d 308 (1980), has settled most of the ground rules with respect to the preclusive effect of a state court judgment in a subsequent civil rights action in federal court. Traditional rules of preclusion are generally applicable in the cross-forum context. However, rules of preclusion and the mandate of 28 U.S.C. § 1738[8] can still be suspended under the *England* reservation mechanism or when the federal party against whom preclusion is asserted did not have a full and fair opportunity to litigate his federal claims in state court. *Id.* at 101 & n.17, 101 S.Ct. at 418 & n.17, 66 L.Ed.2d at 317 & n.17; *see also Montana v. United States*, 440 U.S. 147, 163–64, 99 S.Ct. 970, 978–79, 59 L.Ed.2d 210, 223 (1979). Although both *McCurry* and *Montana* involved collateral estoppel, we are confident that the same exceptions apply to suspend application of res judicata in a federal civil

rights action. We hold that a hybrid of the *England* and full-and-fair-opportunity exceptions requires that res judicata not apply in this case. This decision is based on federal law exceptions to both res judicata and the normal rule that a state court judgment's preclusive effect is determined by reference to the law of the judgment-rendering state.

We have already noted that the district court's promise to Howell that *England* offered a road back to federal court was not supported by the law. Nonetheless, that promise induced Howell to hold back his federal claims once he was relegated to state court. As a result, he could hardly be said to have had a full and fair opportunity to present his federal claims in state court even though such an opportunity was in theory present. Had Howell lodged his federal claims in state court, he would have forsaken the chance he had been offered to return to federal court. We are unwilling to punish Howell for his reliance on the federal district court's guidance.[9] His federal claims are not barred by res judicata.

### IV

In sum, there is neither a jurisdictional nor a preclusive bar to Howell's presentation of his federal claims in federal court. Insofar as those bars have fallen, we reverse the district court's order of dismissal and remand this case to the district court for disposition on the merits.

REVERSED and REMANDED.

---

**8.** 28 U.S.C. § 1738, the Full Faith and Credit Act, provides that the "judicial proceedings of any court of any ... State.... shall have the same full faith and credit in every court within the United States ... as they have by law or usage in the courts of [the] State ... from which they are taken."

**9.** This opinion should not be construed as an endorsement of the type of "simple justice" or "public policy" exception to res judicata that the Supreme Court spurned in *Federated Dep't Stores v. Moitie*, 452 U.S. 394, 399, 101 S.Ct. 2424, 2428, 69 L.Ed.2d 103, 110–11 (1981). The

court in *Moitie* found *Reed v. Allen*, 286 U.S. 191, 52 S.Ct. 532, 76 L.Ed. 1054 (1932), to be controlling. In *Reed*, the court noted that the party trying to escape res judicata was in a "predicament ... of his own making." *Id.* at 198, 52 S.Ct. at 533, 76 L.Ed. at 1056. On the contrary, Howell's predicament resulted from the district court's faulty ruling. Rather than carve out a "simple justice" exception to res judicata, we rely on a hybrid of the two exceptions (*England* and full-and-fair-opportunity) expressly noted in *McCurry* and *Montana*.