MEMORANDUM OPINION AND ORDER
STEGER, District Judge.
This case involves the propriety of an order entered by a state judge excluding the public and the press from pretrial proceedings in a civil case. Joe Murray and Cox Enterprises, Inc., d/b/a, The Lufkin News (plaintiffs or “the newspaper”), initiated this action pursuant to 42 U.S.C. § 1983 seeking an injunction restraining the defendants from excluding members of the public and the press from attending pretrial hearings in a civil action in the 217th Judicial District Court of Angelina County, Texas. The defendants are Marcus Yascocu, the visiting judge who entered the order closing the pretrial proceedings, Sammy Leach, the Sheriff of Angelina County, and John Dixon, the courtroom bailiff. BACKGROUND
On August 3, 1981, a pretrial hearing was convened in a stockholders derivative action, W. B. Shelton, et a1. v. B. H. McVicker, cause number 18,558-81-5, filed by stockholders of the Texas National Bank in Lufkin alleging that certain of the bank’s directors were guilty of mismanagement. The pretrial hearing was convened to consider a special appearance, special exceptions, a plea to the jurisdiction, and a motion to disqualify the counsel for the plaintiffs and counsel for the third party defendant.
At the beginning of the hearing, the attorney for the defendant bank directors filed a written motion asking the trial judge to hold the “pretrial hearing ... in camera permitting in the hearing room only the respective counsel for parties and witnesses at their time of testimony only ...” The motion asserted that a closed hearing was justified because “[t]he cause at hand involves sensitive and confidential matters impinging upon the operation and reputation of a National Bank Association” and “the potential for damage to a National Bank arising from the mere airing of such charges . . . .” Without receiving any objections or evidence, the trial judge granted the motion and ordered a reporter employed by The Lufkin News to leave the courtroom. Within a few minutes, plaintiff, Joe Murray, editor and publisher of The Lufkin News, appeared in the courtroom and objected to the order. After a brief discussion during which no evidence was offered and no party to the case presented a reason why a hearing in open court would harm them, the trial judge ordered Murray from the courtroom and continued to hold the hearing in secret. The trial judge concluded “[tjhis is a highly sensitive matter and [there] will be some decisions made here that the public wouldn’t particularly understand,[1] so, based upon the authority that the court has, I am going to have an in *767 camera hearing, if I have to retire somewhere else.”
After the plaintiffs were excluded from the courtroom they filed a petition to intervene for the limited purpose of objecting to the order of closure. They asked the trial judge to allow them to see the transcript, statement of facts and other evidence and asked that the remaining pretrial proceedings be held in open court. Plaintiffs asked in the alternative that the trial judge review the testimony and other evidence received on August 3, 1981, to determine whether or not a fundamental right of the bank director defendants would be violated if the evidence was made public and to release those portions of the statement of facts that did not violate any such fundamental rights. Finally, plaintiffs asked the trial judge to close only those proceedings necessary to protect fundamental rights.
A hearing on the motion was held in the state court on September 3, 1981. The plaintiffs presented four arguments to the trial court in their brief in support of the petition in intervention. First, that Article I, Section 13 of thfe Constitution of the State of Texas which provides that “[a]ll courts shall be open” requires all judicial proceedings be conducted in open court.[2] Second, that the intent of the Texas legislature to insure public access to judicial proceedings can be implied from Tex.Rev.Civ. Stat.Ann. art. 2324 (Vernon Supp.1980) which provides that each official court reporter shall furnish “to any person a transcript of all such evidence or other proceedings.”[3] Third, that the common law of England, as adopted as the rule of decision in the State of Texas, requires that all courts of law, both civil and criminal, be open to the public.[4] Finally, the Plaintiffs *768 argued that the First and Fourteenth Amendments to the Constitution of the United States require that all civil and criminal judicial proceedings be open to the public and the press absent an overriding interest articulated in the findings.[5] See Richmond Newspapers, Inc. v. Virginia, 448 U.S. 555, 100 S.Ct. 2814, 65 L.Ed.2d 973 (1980), and Gannett Co. v. DePasquale, 443 U.S. 368, 99 S.Ct. 2898, 61 L.Ed.2d 608 (1979). The gist of the plaintiff’s First Amendment argument was that judicial proceedings may be closed only after balancing the right of the public and the press to access to pretrial proceedings against some overriding interest favoring closure asserted by a party to the suit. Plaintiffs argued that there were no facts in the record to support the order of closure on the basis that closure of the pretrial proceedings would protect the constitutional rights of any of the parties or witnesses. The trial judge denied the plaintiffs’ petition to intervene at the close of the hearing and ordered all future pretrial proceedings to be closed to the public.
*762 (j) Personal comfort items and services (for example a television set, or telephone service, etc.); . . .
*768 Under Texas law, the order denying plaintiffs’ motion to intervene is not appeal-able until after final judgment is entered. League of Un. Lat. American Citizens v. Lo-Vaca Gathering Co., 527 S.W.2d 507 (Tex.Civ.App. — San Antonio 1975, writ ref. n. r. e.), cert. denied 425 U.S. 959, 96 S.Ct. 1739, 48 L.Ed.2d 203 (1976); Kimmel v. Lytton, 371 S.W.2d 927 (Tex.Civ.App.— Waco 1963, writ ref’d n. r. e.). Attempting to secure prompt relief, the plaintiffs filed a motion for leave to file a petition for writ of mandamus in the Supreme Court of Texas. Rule 474, Tex.R.Civ.Pro. The petition for writ of mandamus requested that the trial court be ordered to set aside the order excluding the public and the press from court during pretrial proceedings, 24 Tex. Sup.Ct.J. 565 (Sept. 17, 1981). In the petition for writ of mandamus, the plaintiffs presented the same four arguments that they advocated to the trial court. The Supreme Court of Texas overruled the motion for leave to file the petition for writ of mandamus. 24 Tex.Sup.Ct.J. 578 (Sept. 23, 1981).
On September 28, 1981, another pretrial hearing was scheduled in the stockholders’ derivative suit. Before the hearing began, one of the defendants to the proceedings, William C. Conrad, filed a motion asking the trial court to open the pretrial proceedings asserting that he had a right to have the allegations against him tried in open court.[6] The plaintiffs sought to attend the *769 hearing on that motion and the bailiff excluded Murray and reporters of The Lufkin News from the courtroom. Nothing in the record indicates whether the trial judge has ruled on Conrad’s motion.
Unable to obtain the immediate relief they sought in the Texas state courts and faced with the prospect that future pretrial proceedings will be closed to the public, the plaintiffs brought this action asking this court to enjoin the defendants from excluding the public and the press from future pretrial proceedings. In addition to advancing the three claims based on state law and the federal claim presented to the state courts, the plaintiffs contend that they have been denied due process because the State of Texas does not provide a mechanism whereby members of the public and the press have standing to challenge the validity of court orders closing judicial proceedings.
DISCUSSION
The defendants have filed a motion to dismiss pursuant to Rule 12(b), Fed.R. Civ.P., in which they contend that this court does not have jurisdiction over the subject matter of this suit. In the alternative, the defendants contend that the court should abstain from determining the federal constitutional issues until the courts of Texas have a reasonable opportunity to pass on the issues involving state law. Having determined that this court does not have jurisdiction to review the arguments asserted in the courts of the State of Texas, and in order to avoid possible friction between federal and state courts that might be caused by premature constitutional adjudication, the defendants’ motion to dismiss will be granted.
The newspaper’s argument that the First and Fourteenth Amendments to the Constitution of the United States require that all official judicial proceedings be conducted in open court absent a finding by the court of an overriding interest in favor of closure is persuasive. If given the opportunity to decide the question, this court might well adopt that position. Richmond Newspapers, Inc. v. Virginia, 448 U.S. 555, 100 S.Ct. 2814, 65 L.Ed.2d 973 (1980); Gannett Co. v. DePasquaie, 443 U.S. 368, 99 S.Ct. 2898, 61 L.Ed.2d 608 (1979). However, this court does not have jurisdiction to decide the issue. As noted above, this federal constitutional claim and the three pendent claims based on state law were rejected by the state trial court and presented to the Supreme Court of the State of Texas. It is well settled that a federal district court does not have jurisdiction to review a final order of a state court. Lampkin-Asam v. Supreme Court of Florida, 601 F.2d 760 (5th Cir. 1979), cert. denied 444 U.S. 1013, 100 S.Ct. 662, 62 L.Ed.2d 642 (1980). Expounding upon this principle in its original opinion in Dasher v. Supreme Court of Texas, 650 F.2d 711 (5th Cir. 1981), the Fifth Circuit stated:
[a] federal district court, as a court of limited original jurisdiction, lacks power to review, modify or nullify a final order of a state court. Nor can a party, aggrieved by a judicial decision of a state’s highest court, invest a lower federal court with such jurisdiction by clothing his or her grievance in the garb of § 1983 and alleging that the decision of the state court deprived him or her of constitutionally protected rights or interests. Lampkin-Asam v. Supreme Court of Florida, 601 F.2d 760 (5th Cir. 1979), cert. denied 444 U.S. 1013, 100 S.Ct. 662, 62 L.Ed.2d 642 (1980); Sawyer v. Overton, 595 F.2d 252 (5th Cir. 1979); Aris v. Big Ten Taxi Corp., 441 F.2d 536 (5th Cir. 1971). A party seeking relief from such an allegedly unconstitutional action by a state court may seek review in only one federal court — the United States Supreme Court.
Id. at 714-715. On petition for rehearing, the Dasher panel withdrew its original opinion but affirmed the principle of law quoted above which it described as “hornbook law” in the original opinion. Dasher v. Supreme Court of Texas, 658 F.2d 1045 (5th Cir. 1981). The second Dasher opinion subscribes to the principle that federal constitutional claims properly raised in state court proceedings may not be reviewed by a federal tribunal other than the United States Supreme Court.
*770 In this case, it is not clear whether the order of the Supreme Court of Texas denying the motion for leave to file petition for writ of mandamus is a “final order” subject to review by the Supreme Court of the United States on writ of certiorari. 28 U.S.C. § 1257(3).[7] However, in a similar situation, the Fifth Circuit concluded that an order overruling a motion for leave to file an original proceeding in the Supreme Court of Texas is a “final order” for the purpose of 28 U.S.C. § 1257(3). Dasher v. Supreme Court of Texas, 658 F.2d 1045, 1050-51 (5th Cir. 1981). The discussion is as follows:
In the Texas Supreme Court, Ms. Dasher proceeded under Rule 474 of the Texas Rules of Civil Procedure. This rule provides that an original proceeding in that court is properly commenced by delivering a ‘Motion for Leave to File’ the action, a verified ‘Petition’ setting forth the nature and grounds of the relator’s (the petitioner’s) claim for relief and a brief in support of the petition to the clerk of the court. The rule further provides that:
If the court is of the tentative opinion that relator is entitled to the relief sought, the motion for leave to file will be granted, the petition filed, and the cause placed upon the docket. Otherwise the motion will be overruled.
We think the language of the rule makes clear that in making a determination whether to grant or overrule the motion for leave to file, the court does not examine only the motion, but considers the merits of the petition and brief in support thereof as well. There is no indication in the record of the proceedings in the Texas Supreme Court that Ms. Dasher’s motion and petition faltered for lack of jurisdiction or for failure to comply with any state procedural rules. The Texas Supreme Court did not ‘dismiss’ her motion — customary disposition of matters over which the court lacks jurisdiction or which fail to comply with a procedural requirement, see Tex.R.Civ.P. 483; the court ‘overruled’ her motion, a disposition which, according to the language of Rule 474 reflects an assessment of the merits. We cannot agree therefore with Ms. Dasher’s argument that she was precluded from seeking certiorari because the Texas Supreme Court had made no ruling on the merits of her case which could constitute a final judgment within the meaning of 28 U.S.C. § 1257(3). (footnote omitted)

Id.

It is also significant that the cases relied upon by the Plaintiffs in support of their constitutional claims, Richmond Newspapers, Inc. v. Virginia, 448 U.S. 555, 100 S.Ct. 2814, 65 L.Ed.2d 973 (1980) and Gannett Co. v. DePasquale, 443 U.S. 368, 99 S.Ct. 2898, 61 L.Ed.2d 608 (1979), were both initiated in the state courts and reviewed by the Supreme Court by writ of certiorari. 28 U.S.C. § 1257(3). Although set forth as a claim brought under § 1983, the substance of the relief requested by the Plaintiffs would require this Court to review the actions of the state trial judge and the Texas Supreme Court. If the plaintiffs’ constitutional rights have in fact been aggrieved by the ruling of the Texas Supreme Court, the plaintiffs might be able to obtain prompt review in the Supreme Court of the United States. Nebraska Press Association v. Stuart, 423 U.S. 1327, 96 S.Ct. 251, 46 L.Ed.2d 237 (1975). (Opinion in chambers of Justice Blackmun on reapplication for stay.) Based on the teachings of Dasher I, supra, Dasher II, supra and Lampkin-Asam *771 v. Supreme Court of Florida, supra, it is clear that this court may not adjudicate the merits of the federal constitutional challenge raised by the plaintiffs in the state courts. Except in the most compelling circumstances, a litigant in state court should not be permitted to bypass that forum’s appellate processes by initiating a § 1983 action in a federal district court claiming that he or she has been denied due process.
Although the review by the state appellate courts will necessarily be after the conclusion of the closed pretrial proceedings, this Court is of the opinion that it should abstain from determining plaintiffs’ claim that they have been denied due process until the appellate courts of Texas are given a reasonable opportunity to resolve the questions involving state law which were presented by the newspaper in the pending state court proceeding. Railroad Commission of Texas v. Pullman, 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941). Abstention is appropriate in this case because the federal constitutional issues “might be mooted or presented in a different posture by a state court determination of pertinent state law.” Colorado River Water Conservation District v. United States, 424 U.S. 800, 814, 96 S.Ct. 1236, 1244, 47 L.Ed.2d 483 (1976), quoting County of Allegheny v. Frank Mashuda Co., 360 U.S. 185, 79 S.Ct. 1060, 3 L.Ed.2d 1163 (1959).
The plaintiffs rely on the case of WXYZ, Inc. v. Hand, 658 F.2d 420 (6th Cir. 1981), for the proposition that abstention is inappropriate. In WXYZ, Inc. v. Hand, 463 F.Supp. 1070 (E.D.Mich.1979), the district court held that a state statute and a suppression order issued by a state district judge pursuant to that statute were unconstitutional, as prior restraints on the freedom of the press condemned by the Supreme Court in Nebraska Press Association v. Stuart, 427 U.S. 539, 96 S.Ct. 2791, 49 L.Ed.2d 683 (1976). The circuit court affirmed the decision of the district court and held that abstention was inappropriate. It is significant that the federal district court certified questions to the Michigan Supreme Court concerning the interpretation of the Michigan statute in question. Although the Michigan Supreme Court declined to respond, it did note that the state law question could not be resolved without determining the federal constitutional questions. WXYZ, Inc. v. Hand, 658 F.2d at 422, n. 3. In other words, the Michigan state courts were afforded a reasonable opportunity to pass upon the question involving state law. Based on those facts, the WXYZ court properly determined that abstention based on Railroad Commission of Texas v. Pullman Co., 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941), was inappropriate.
In this case, it has not been established that the newspaper’s motion for leave to file a petition for writ of mandamus afforded the Texas appellate courts a reasonable opportunity to pass upon the claims based on state law. It has not been finally determined whether Murray and The Lufkin News have standing under Texas law to challenge the validity of the closure order.
The plaintiffs will be able to appeal the denial of their petition to intervene in the state court after a final judgment is entered. While the denial of the application for leave to file a petition for writ of mandamus is a final order and is not subject to review in a lower federal district court, Dasher v. Supreme Court of Texas, supra, 658 F.2d at 1051, the state appellate courts will have the opportunity to pass on the newspaper’s claims presented in its motion to intervene. Under Texas law, the decision denying the motion to intervene in the action in Angelina County, is a final order that is appealable after a final judgment is entered. Kimmel v. Lytton, supra, 371 S.W.2d 927.
If given a reasonable opportunity to pass upon the merits of Plaintiff’s claims predicated upon state law and the denial of the motion to intervene, it is possible that the Texas appellate courts will resolve the controversy on state grounds so that unnecessary constitutional adjudication may be avoided. Texas appellate courts should be given a reasonable opportunity to pass on the questions necessarily involving state law.
*772 Accordingly, it is ORDERED that the defendants’ motion to dismiss be and hereby is GRANTED and that the plaintiffs’ cause of action be and hereby is DISMISSED.

. Under Texas law, it is questionable whether elected public officials are empowered to determine what the “public” would understand. The public policy of the State of Texas on this point is expressed in Tex.Rev.Civ.Stat.Ann. art. 6252-17a § 1 (Vernon Supp. 1980-1981) which provides:
Pursuant to the fundamental philosophy of the American constitutional form of representative government which holds to the principle that government is the servant of the people, and not the master of them, it is hereby declared to be the public policy of the State of Texas that all persons are, unless otherwise expressly provided by law, at all times entitled to full and complete information regarding the affairs of government and the official acts of those who represent them as public officials and employees. The people, in delegating authority, do not give their public servants the right to decide what is good for the people to know and what is not good for them to know. The people insist on remaining informed so that they may retain control over the instruments they have created. To that end, the provisions of this Act shall be liberally construed with the view of carrying out the above declaration of public policy.

. Tex.Const. art. I, § 13 provides:
Excessive bail shall not be required, nor excessive fines imposed, nor cruel or unusual punishment inflicted. All courts shall be open, and every person for an injury done him, in his lands, goods, person or reputation, shall have remedy by due course of law.
The interpretative commentary accompanying § 13 provides in pertinent part:
The provision of Section 13 that ‘[a]ll courts shall be open, and every person for an injury done him, in his lands, goods, person, or reputation, shall have remedy by due course of law’ is based largely upon Magna Carta which states in Chapter 40: ‘To none will we sell, to none deny or delay, right or justice.’ In a free government it can be said that the doors of litigation are wide open and must constantly remain so. Hence it has been held under the Constitution of Texas that the courts may not be closed, or their processes interfered with by military orders; that the governor is without power to deprive persons of access to courts by declaration of martial law unless there is a dire and inexorable emergency in a case of actual warfare and within an area of actual hostilities. Constantin v. Smith, 57 F.2d 227 (1932), appeal dismissed, Sterling v. Constantine, 287 U.S. 378, 53 S.Ct. 190, 77 L.Ed. 375 (1932).
Although no Texas court has interpreted the provision relied on, in KFGO v. Rothe, 298 N.W.2d 505 (N.D.1980), the North Dakota Supreme Court held that a similar provision of the North Dakota Constitution, art. I, § 22, confers an independent right of the public to attend court proceedings. Id. at 511.

. Tex.Rev.Civ.Stat.Ann. art. 2324 (Vernon Supp. 1980-1981) provides in part:
Each Official Court Reporter shall upon request:
Attend all sessions of the court; take full shorthand notes of all oral testimony offered in cases tried in said court, together with all objections to the admissibility of the evidence, the rulings arid remarks of the court thereon, and all exceptions thereto; take full shorthand notes of closing arguments when requested to do so by the attorney for any party to such case, together with all objections to such arguments, the rulings and remarks of the court thereon, and all exceptions thereto;
Preserve all shorthand notes taken in said court for future use or reference for three full years, and furnish to any person a transcript of all such evidence or other proceedings, or any portion thereof as such person may order, upon the payment to the official shorthand reporter of the fees provided by the judge. (Emphasis added).
Plaintiffs had requested that the trial judge allow the court reporter to furnish the newspaper with a transcript of the closed hearing. The duties of official court reporters are performed under the supervision of the presiding judge of the court. Rule 376b(a), Tex.R.Civ.P. The trial judge denied the plaintiffs’ request.

. Tex.Rev.Civ.Stat.Ann. art. 1 (Vernon 1969) provides:
The common law of England, so far as it is not inconsistent with the Constitution and laws of this State, shall together with such *768 Constitution and laws, be the rule of decision, and shall continue in force until altered or repealed by the Legislature.
It has been established that civil and criminal trials were not closed to the public under the common law. The opinion of Chief Justice Burger in Richmond Newspapers, Inc. v. Virginia, 448 U.S. 555, 564-574, 100 S.Ct. 2814, 2821-2826 (1980), in discussing the history of criminal trials in Anglo-American justice concluded that “the trial has been open to all who cared to observe” since before the days of the Norman Conquest. The opinion of the Chief Justice expressly recognized that “[wjhether the public has a right to attend trials of civil cases is a question not raised by this case, but we note that historically both civil and criminal trials have been presumptively open.” Id. at 580, n. 17, 100 S.Ct. at 2829, n. 17. The concurring opinions of Justice Brennan and Black-mun in Richmond Newspapers and the concurring and dissenting opinion of Justice Black-mun in Gannett Co. v. DePasquale, 443 U.S. 368, 99 S.Ct. 2898, 61 L.Ed.2d 608 (1979) also recognize that judicial proceedings were presumptively open at common law.

. The plaintiffs recognized that there is not an absolute right to open judicial proceedings in all circumstances. For example, the interests of a criminal defendant to a fair trial by an impartial jury, Gannett Co. v. DePasquale, 443 U.S. 368, 99 S.Ct. 2898, 61 L.Ed.2d 608 (1981), the interests of a minor, Tex.Fam.Code Ann. § 11.14, 14.07 and 54.08, or the interests of the mentally ill, Tex.Rev.Civ.Stat.Ann. art. 5547-36 and 5547-49, might justify the closure of the judicial proceedings.

. Conrad requested the court to permit news media coverage of all facets of the proceedings because “the issues involved in the lawsuit are so vital to the interest and property of many citizens of this county the public should be informed of each development in the litigation.” Continuing, Conrad argued that the only manner in which the public can be informed and his competence and character vindicated is by competent and adequate coverage by qualified representatives of the news media.

. In several cases, the Supreme Court has discussed what constitutes a “final order” for purposes of its appellate jurisdiction under 28 U.S.C. § 1257(1). In Cox Broadcasting Corp. v. Cohn, 420 U.S. 469, 95 S.Ct. 1029, 43 L.Ed.2d 328 (1975), the Court discusses four categories of cases in which a state court’s decision on the federal issues is considered a “final judgment” for purposes of appellate jurisdiction. See Nebraska Press Assn. v. Stuart, 423 U.S. 1327, 96 S.Ct. 251, 46 L.Ed.2d 237 (1975), (inaction by the Supreme Court of Nebraska was a final judgment) and Philadelphia Newspapers, Inc. v. Jerome, 434 U.S. 241, 98 S.Ct. 546, 54 L.Ed.2d 506 (1978), (case remanded to the Supreme Court of Pennsylvania to explain whether that court denied a writ of mandamus on federal grounds or on independent state grounds).