**Marta CARBONELL,
Plaintiff-Appellant,**

v.

**LOUISIANA DEPT. OF HEALTH & HUMAN RESOURCES, Secretary of the Louisiana Dept. of Health & Human Resources, et al., Defendants-Appellees.**

No. 85–3088
**Summary Calendar.**

United States Court of Appeals,
Fifth Circuit.

Oct. 3, 1985.

Marta Carbonell, pro se.

Antonio L. Carbonell, New Orleans, La., for plaintiff-appellant.

Jesse James Marks, Asst. Atty. Gen., Dept. of Justice, New Orleans, La., for defendants-appellees.

Before POLITZ, GARWOOD and JOLLY, Circuit Judges.

POLITZ, Circuit Judge:

Marta Carbonell appeals the dismissal, after a bench trial, of her complaint invoking Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, and 42 U.S.C. §§ 1981 and 1983. The parties agreed to a trial before a magistrate with direct appeal to this court, 28 U.S.C. § 636. Finding no merit in any claim presented, we affirm the dismissal for the reasons we set forth.

*Facts*

Carbonell is a native of Cuba. She was employed by the state of Louisiana in various capacities. Her last assignment was with the Louisiana Department of Health and Human Resources (DHHR) as a Clinical Social Worker V, in the New Orleans Substance Abuse Clinic. As the second highest employee in that clinic, Carbonell was the chief social worker and supervised the Spanish-speaking program, day and evening supervisors and Spanish personnel. It is apparent that personal friction existed between Carbonell and her immediate supervisor, Adrienne Mouledoux, the district administrator.

Beginning in 1976 Carbonell filed various complaints with the Equal Employment Opportunity Commission (EEOC). The first complaint was against Mouledoux and raised claims of discrimination based on national origin. Subsequent complaints charged retaliatory acts allegedly triggered by the EEOC filings. Matters worsened until Calvin Bankston, head of the DHHR Bureau of Substance Abuse, determined to solve his department's serious personnel problem by separating the protagonists. He reassigned Carbonell from the New Orleans Substance Abuse Clinic to a newly designated Substance Abuse Clinic in neighboring St. Bernard Parish. Carbonell was assigned to the new clinic as its administrative head and was told to report for duty on August 21, 1979. Carbonell declined, considering this transfer discrimina-

tory, retaliatory, and tantamount to an assignment to "Outer Mongolia," a characterization not likely shared by the thousands of residents of St. Bernard Parish.

In lieu of reporting to St. Bernard on August 21, 1979, Carbonell visited the EEOC office, filed a complaint, and then went to the New Orleans clinic. She was instructed to declare in writing whether she would accept her new assignment. By day's end on August 21, Carbonell delivered a letter to Mouledoux stating that she was "herewith declining the assignment and taking the proper legal action."

On August 22, 1979, Carbonell called Bankston and told him of her refusal to obey his transfer order. Bankston placed Carbonell on a three-day suspension without pay for insubordination and orally ordered her to report to the St. Bernard clinic on August 27. On August 24, Carbonell was given a written confirmation of the suspension and directed in writing to report to St. Bernard on August 27.

Carbonell responded to the suspension by amending her EEOC charge to include a claim that the transfer was in retaliation for her EEOC filing. Instead of reporting to St. Bernard on August 27, Carbonell opted to again report to the New Orleans clinic. Early that morning her husband delivered a letter to Mouledoux's home, addressed to Bankston, in which Carbonell repeated her charge that the transfer was arbitrary, illegal, abusive, and in retaliation for filing EEOC complaints. She again declined to report to St. Bernard and stated that at 10:30 a.m. she would be at the New Orleans clinic.

When Carbonell arrived at the New Orleans clinic on August 22 she was met by Bankston who urged her to consider the seriousness of her refusal to accept the reassignment. Bankston again ordered her to report to St. Bernard. Carbonell refused. Later that day she was given a letter of removal which she promptly appealed to the Louisiana Civil Service Commission (CSC).

The CSC appointed a referee who conducted public hearings on August 11–13, 1980; April 20–24, 1981; May 26–29, 1981; and June 8–9, 1981. The CSC affirmed the DHHR removal. On appeal, the Louisiana Court of Appeal for the First Circuit affirmed the CSC decision. *Carbonell v. Dept. of Health & Human Resources*, 444 So.2d 151 (La.App.1983).

After her dismissal, Carbonell again amended her EEOC complaint to charge that the dismissal was retaliatory. The EEOC declined to press the matter and issued the statutory right-to-sue letter. Carbonell filed the instant suit claiming, as above noted, Title VII, § 1981, and § 1983 violations.

A bench trial before the magistrate lasted a week. At the outset of his memorandum opinion the magistrate stated:

If this Court were to make findings of fact based upon the evidence presented and testimony offered at trial, they would be identical to those facts set forth by the First Circuit Court of Appeal in its decision. This Court hereby adopts the findings of the state appeals court as its own. *Carbonell v. Dept. of Health and Human Resources*, No. 83–0186 [444 So.2d 151] (La.Ct.App. 1st Cir., Dec. 22, 1983).

After making these factual findings by reference and adoption, the magistrate proceeded to dismiss all claims. The Title VII claims against all individual defendants were dismissed because they were not the employer and Title VII was not applicable to them. The Title VII complaint against DHHR was dismissed on grounds of res judicata. The § 1981 claim was dismissed for failure of any evidence of intent to discriminate against Carbonell on the basis of national origin. Finally, as to the § 1983 claim, the magistrate found that Carbonell was inappropriately attempting to appeal a decision of the Louisiana court to the federal court, a matter over which the court lacked jurisdiction.

## Analysis

Carbonell urges, with subcategorizations, more than a score of assignments of error.

Most are totally without merit. We combine the remainder for review.

## A. *Section 1981 Claim*

 As an appellate tribunal, we are constrained by Fed.R.Civ.P. 52(a) to accept all findings of fact made by the trier of fact, in this instance the magistrate, unless shown to be clearly erroneous. There has been no such showing. Nor could any such showing be made. The facts as found by the magistrate, through his adoption of the state court findings, are fully supported by the record. This claim borders on the frivolous.

## B. *Section 1983 Claim*

Stripped to its essentials, Carbonell's § 1983 complaint would have the district court sit in review of the decision of the Louisiana First Circuit Court of Appeal. The district court lacks jurisdiction to conduct that exercise. As we held in *Kimball v. The Florida Bar*, 632 F.2d 1283, 1284 (5th Cir.1980):

Stripped to its essentials, Kimball's petition for declaratory and injunctive relief asks the federal district court to reverse a final, definitive state court order. As we stated in *Lampkin-Asam v. Supreme Court of Florida*, 601 F.2d 760 (5th Cir. 1979): "This Court has held on numerous occasions that federal district courts do not have jurisdiction under 42 U.S.C. § 1983 or any other theory to reverse or modify the judgments of state courts." We echo that it "is axiomatic that a federal district court, as a court of original jurisdiction, lacks appellate jurisdiction to review, modify, or nullify a final order of a state court. 28 U.S.C. § 1257(3)." *Id.* The proper forum for the relief Kimball now seeks was the United States Supreme Court.

 It is hornbook law that § 1983 does not create a federal cause of action but, rather, a remedy for the vindication of other federal statutory or constitutional rights. That those rights have been adjudicated in a state court under concurrent § 1983 jurisdiction or under a state cause of action is of no moment: once a determination has been made by a state court relative to the existence or non-existence of a federal right, and any possible infringement of that right, the only avenue of review is to the United States Supreme Court via 28 U.S.C. § 1257(3). As a panel of this court observed:

A federal district court, as a court of limited original jurisdiction, lacks power to review, modify or nullify a final order of a state court. Nor can a party, aggrieved by a judicial decision of a state's highest court, invest a lower federal court with such jurisdiction by clothing his or her grievance in the garb of § 1983 and alleging that the decision of the state court deprived him or her of constitutionally protected rights or interests.... A party seeking relief from such an allegedly unconstitutional action by a state court may seek review in only one federal court—the United States Supreme Court.

*Dasher v. Supreme Court of Texas*, 650 F.2d 711, 714–15 (5th Cir.1981), *rev'd on other grounds*, 658 F.2d 1045 (5th Cir.1981) (*on reh'g*), *reh'g opinion disapproved*, *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 482 n. 16 (1983). *See also Brown v. Chastain*, 416 F.2d 1012 (5th Cir.1969); *Gresham Park Community Organization v. Howell*, 652 F.2d 1227 (5th Cir.1981).

 We recognize that Carbonell has not faulted the Louisiana court, as such, but she asserts the same claims previously asserted in the state system. She maintains that the DHHR violated her Title VII fair employment rights. The underlying federal right now advanced is identical to that adjudged by the Louisiana court. Thus, whether the dismissal of the § 1983 claim for lack of jurisdiction should be upheld hinges on whether the complaint seeks an exercise of appellate or original jurisdiction. Despite the fact that the proceedings before the Louisiana Civil Service Commission and the subsequent state-court appeal were based largely on state administrative and statutory law, the Supreme Court's

opinion in *District of Columbia Court of Appeals v. Feldman,* 460 U.S. 462, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983), teaches that the nature of the underlying claim, not the nature or basis of the desired relief, directs the answer to the appellate versus original jurisdiction inquiry. When a plaintiff presents federal claims that "are inextricably intertwined with the state court's denial in a judicial proceeding of a particular plaintiff's [state-law claim], then the District Court is in essence being called upon to review the state-court decision. This the District Court may not do." *Feldman,* 460 U.S. at 482 n. 16, 103 S.Ct. at 1315 n. 16, 75 L.Ed.2d at 223 n. 16. *Feldman* directs the inquiry away from a mechanical classification of the relief requested or the cause of action, toward a realistic consideration of the nature of the underlying claim.

The instant case is guided by *Feldman.* We are presented with a § 1983 claim challenging an adverse state-court judgment on the theory that the state administrative action therein upheld violated the plaintiff's constitutional rights. This necessarily invites appellate review of the determinations of federal rights by the Louisiana court of appeal. That review is beyond the jurisdictional pale of the federal district court. The magistrate properly concluded that the court had no subject-matter jurisdiction over this § 1983 claim as postulated.

### C. *Title VII Claim*

■ It cannot be gainsaid that the dismissal of the Title VII claims against the non-employer individual defendants was appropriate. Only the claim against the DHHR need be reviewed. The magistrate concluded that review of this claim against the DHHR was precluded by operation of the doctrine of res judicata, 28 U.S.C. § 1738, a defense which was not pled.

■ This approach is fraught with difficulty for under Rule 8(c), Federal Rules of Civil Procedure, the defense of res judicata must be affirmatively pled. Generally this rule is strictly read and applied, but in this circuit we have recognized two limited instances in which the trial or appellate court may raise the issue sua sponte. An example of one exception is *United Home Rentals, Inc. v. Texas Real Estate Commission,* 716 F.2d 324, 330 (5th Cir.1983), where after observing that res judicata is an affirmative defense which must be specially pleaded we observed:

> [The] failure to assert res judicata as a defense does not determine the issue, however, since in the interest of judicial economy res judicata may properly be raised by a district court sua sponte, particularly where both actions are brought in the courts of the same district. *See Boone v. Kurtz,* 617 F.2d 435, 436 (5th Cir.1980) (affirming district court sua sponte dismissal on res judicata grounds) .... On occasion, appellate courts have raised the issue for the first time on appeal. *See Robertson v. Interstate Securities Co.,* 435 F.2d 784, 787 n. 4 (8th Cir.1971).... In these cases, however, the appellate court considered applying res judicata as a means to affirm the district court decision below.

The other exception involves the situation in which all relevant data and legal records are before the court and the demands of comity, continuity in the law, and essential justice mandate judicial invocation of the principles of res judicata. This exception is illustrated by our decision in *American Furniture Co. v. International Accommodations Supply,* 721 F.2d 478 (5th Cir.1981).

We are not persuaded that the case now before us qualifies under either exception; we therefore decline to use 28 U.S.C. § 1738 as a bar to consideration of the Title VII claim.

■ The evidence of record provides an ample basis for affirming the dismissal of Carbonell's Title VII claim. Reaching and reviewing the magistrate's adoptive findings in light of this evidence, we find no clearly erroneous factual finding. The scenario which we must accept under the directive of Fed.R.Civ.P. 52(a) demonstrates

**190**

that Carbonell was discharged for rank insubordination. She repeatedly refused direct orders of reassignment. She reserved to herself the right to determine the clinic in which she would work. Working in the parish of St. Bernard somehow offended her sensibilities. She insisted on having her way notwithstanding the urgings and orders of her superiors. We find no support in the accepted findings of fact; indeed we find no support in the record for the claim that retaliatory actions were taken because of her national origin or because she filed various EEOC charges. We find and conclude that Carbonell has failed to establish the discrimination charged. Her Title VII complaint is without merit.

Finally, we consider Carbonell's argument that the recent decision by the Supreme Court in *Cleveland Board of Education v. Loudermill,* 470 U.S. ——, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985), declares her dismissal constitutionally infirm and that the decision by the Louisiana Civil Service Commission and Louisiana Court of Appeal must be accordingly reversed. This challenge founders on the same legal shoals as the § 1983 claim discussed *supra.* Lower federal courts do not review on appeal the constitutionality of state court decisions. That prerogative belongs exclusively to the Supreme Court. 28 U.S.C. § 1257(3); *Kimball v. The Florida Bar.* Whatever *Loudermill* portends for future litigation, it does not impact on the result of this proceeding.

The magistrate dismissed all claims. We AFFIRM his judgment.