**U.S. INDUSTRIES, INC., Plaintiff,**

v.

**Jose Enrique LABORDE,
et al., Defendants.**

**Civ. No. 90–1422(JP).**

United States District Court,
D. Puerto Rico.

May 22, 1992.

Rubén T. Nigaglioni, Ledesma, Palou & Miranda, Hato Rey, P.R., for plaintiff.

Mirta Rodríguez Mora, Dept. of Justice, Fed. Litigation Div., Rafael R. Vizcarrondo, Fiddler, González & Rodríguez, San Juan, P.R., Rolando D. Martínez Rivera, Carolina, P.R., Antonio Moreda Toledo, Moreda & Moreda, San Juan, P.R., for defendants.

## OPINION & ORDER

PIERAS, District Judge.

The Court has before it the Motion to Dismiss filed by defendants José Enrique Laborde, Salvador Arana, Patria Custodio, Néstor López Vázquez, Héctor Rivera Cruz, and the Puerto Rico Land Administration on May 10, 1990, and the Motion to Dismiss and/or for Summary Judgment filed by defendant Federación de Pescadores de Playa Picúa, Inc. on June 4, 1990. For the reasons set forth below, the motions to dismiss are GRANTED in part and DENIED in part.

### I. Background

Plaintiff brought this action on March 22, 1990, by the filing of a verified complaint. The action arises out of the segregation and sale by plaintiff of property located in Rio Grande, Puerto Rico. In a prior action in the Superior Court of Puerto Rico, the segregation and sales were declared null and void. Plaintiff has asked this Court to declare the judgment in the Superior Court action void, to find that

various Puerto Rico officials have violated plaintiff's civil rights by their conduct during and leading up to that action, and to allow the rights of the parties to be resolved by the Court through an interpleader action. The jurisdiction of the Court is predicated on 28 U.S.C. §§ 1331, 1332, 1335 and 1343.

Plaintiff U.S. Industries, Inc. (hereinafter "USI") is a Delaware corporation with its principle place of business in New York. Defendants are the Secretary of the Puerto Rico Department of Natural Resources (José Enrique Laborde), the Director of the Puerto Rico Regulations and Permits Administration ("ARPE") (Salvador Arana), the President of the Puerto Rico Planning Board (Patria Custodio), the Mayor of Río Grande, Puerto Rico (Blanca Medina Uriguen), the Director of the Expropriation and Eminent Domain Division of the Puerto Rico Department of Justice (Néstor López Vázquez), and the Puerto Rico Secretary of Justice (Héctor Rivera Cruz), all sued in their official capacities, as well as the Puerto Rico Land Administration, the Municipality of Río Grande, and the Federación de Pescadores de Playa Picúa, Inc. (the "Federación"). The interpleader defendants are the individuals and entities which, according to the Property Registry, own the parcels of land that were sold by USI.

■ The facts material for purposes of defendants' motions are not in dispute. As is required in the context of a motion to dismiss, the Court has relied primarily on the statement of the facts contained in plaintiff's complaint, the allegations of which have been taken as true. *Accord Warth v. Seldin,* 422 U.S. 490, 501, 95 S.Ct. 2197, 2206, 45 L.Ed.2d 343 (1975); *Jenkins v. McKeithen,* 395 U.S. 411, 421–22, 89 S.Ct. 1843, 1848–49, 23 L.Ed.2d 404 (1969). In 1978, USI acquired at a judicial sale a block of beachfront property located in Río Grande, less than an hour's drive west of San Juan. USI apparently intended to use

the property, which consists of 792.73 *cuerdas*[1] and is commonly known as Las Picúas, to build a resort complex. In March 1980, however, the Puerto Rico Planning Board denied USI's request to develop the property. Then, on February 5, 1982, pursuant to a flood map issued by the Puerto Rico Planning Board, the property was designated as a flood zone, which limited the uses and segregation of the property.

On April 29, 1983; USI segregated 9.4715 cuerdas of Las Picúas and sold it to the Continental Tennis and Beach Resort Corporation ("Continental Tennis"). On July 5, 1983, USI segregated the remainder of the property for agricultural purposes and sold 30 parcels, each in excess of 25 cuerdas, to various individuals and entities. Each of the deeds for these sales stated that land was located in a flood zone and segregated for agricultural purposes. After these sales, several structures were built on the properties by the new owners. Many of these construction projects were carried out after use permits were issued by ARPE.

On September 12, 1984, the Federación filed a suit in the Superior Court of Puerto Rico requesting a declaratory judgment, a temporary restraining order, and preliminary and permanent injunctions against USI and some of the individual owners.[2] The Federación alleged that the land was not being used for agricultural purposes and that the owners were instead subdividing their parcels, removing soil, building structures, destroying vegetation, and denying public access to the beach. The Federación requested injunctions and damages for the alleged denial of access. It asserted that the actions of the owners violated the regulations of Planning Board concerning the appropriate uses of property located in flood zones. The Planning Board itself initially declined to intervene in the suit.

---

1. A *cuerda* is a Puerto Rican land measurement roughly equivalent to an acre.

2. The *Federación de Pescadores de Playa Picúa,* as its name implies, is a group representing

fishermen working at Picúas Beach. It sought to regain access for its members to the beach through USI's property, which provides the only access to the beach.

In 1985, pursuant to a Special Zoning Map for Río Grande, Las Picúas was designated as a Natural Reserve Zone, which further limited the uses and segregation of the property. In early 1986, the Planning Board, the Municipality of Río Grande, the Municipal Assembly of Río Grande, the Department of Natural Resources, and ARPE all made motions to intervene in the Superior Court action, all of which were allowed. The Planning Board requested that the sales by USI be declared void, that title be returned to USI, and that USI be enjoined from segregating the property and building structures on it. In its answers to the complaints filed by the intervenors, USI set forth various defenses based on Puerto Rico laws and regulations. USI did not assert any defenses based on its rights under the United States Constitution or federal civil rights law. Instead, it stated that it was "reserving" those rights. These allegedly reserved rights are the basis of USI's claims in this case.

On January 13, 1989, the Superior Court issued an Extraordinary Order for the management of the Federación case. The Order dictated that the case be tried only against USI and Manuel Rivera Torres, an individual who had purchased two of the segregated parcels. The case was tried under a series of Puerto Rico laws and regulations including (i) Article 3 of Planning Regulation 3, which provides that certain restrictions on the segregation of land do not apply if the parcel segregated is over 25 cuerdas, and (ii) § 6.04 of Planning Regulation 13, which restricts the segregation of areas after they have been designated as flood zones.[3] The Government argued that the exemption of Article 3 of the Segregation Regulation did not apply to Las Picúas, since it was instead governed by the regulations relating to natural reserves. USI argued that the exemption of Article 3 did apply since it was the only regulation specifically related to segrega-

tions. USI also argued that § 6.04 of Planning Regulation 13 was inapplicable to the segregation of Las Picúas since the regulation only applies to the building of structures in flood zones, not to the segregation of property in such zones. Finally, USI argued that the other owners of the segregated parcels excluded from the trial by the Extraordinary Order were indispensable parties who must be joined in the suit.

On June 22, 1989, the Planning Board, in response to a request of the Puerto Rico Land Administration, issued a resolution approving the acquisition of Las Picúas for the creation of a natural reserve. The resolution expressly approved the prior segregations of the property by USI. Based on this resolution, USI filed a motion for summary judgment in the Federación case; however, on August 31, 1989, the Planning Board issued a second resolution withdrawing its approval of the segregation.

On November 1, 1989, judgment was entered by the Superior Court, which held: (i) that the segregation of Las Picúas was null and void because it was made in violation of § 6.04 of Regulation 13; (ii) that the purchase and sale agreements between USI and Rivera Torres were null and void; (iii) that although USI had not itself engaged in any construction or otherwise caused ecological harm to the land, it was nonetheless jointly liable for any harms caused; (iv) that USI was liable in the amount of $150,-000.00 for damages based on an estimation of damages (reduced by contributory negligence); and (v) that no permanent injunction should issue. USI asked the Puerto Rico Supreme Court to review the judgment, but the request was denied. The judgment of the Superior Court is therefore final.

Following the judgment, the government requested cancellation of the segregation. On December 15, 1989, the Department of

---

**3.** The other laws and regulations involved included: (i) 23 L.P.R.A. § 62o (segregations); (ii) Article 1 of Planning Regulation 3 (segregations); (iii) 23 L.P.R.A. § 225 (flood zones); (iv) § 1.02 of Planning Regulation 13 for Building and Development of Flood Zones; (v) § 17 of Planning Regulation 17 for Zoning of Coastal Areas and Beach Access, (vi) § 11 of Special Zoning Regulation for El Yunque (natural reserves limited for scientific study and recreational activities and may not be segregated); and (vii) the Special Zoning Map for Rio Grande (declaring Las Picúas a Natural Reserve).

Natural Resources and the Department of Justice filed requests in the Federación case for a judgment declaring that USI is the owner of Las Picúas and an injunction prohibiting further construction on the property. In January 1990, the Federación and the government agencies filed motions for summary judgment on these requests. On February 13, 1990, the Superior Court informed the other owners of the segregated parcels that they were nominal parties in the suit but would not be allowed to intervene.

In 1989, the Commonwealth instituted eminent domain proceedings and expropriated portions of nine of the segregated parcels, amounting to 14.471 cuerdas. The Commonwealth deposited in the Superior Court $28,982.00 as estimated just compensation. On July 3, 1989, the Secretary of Justice and the Expropriation Division of the Department of Justice filed a suit seeking another two parcels by eminent domain—the one sold to Continental Tennis and another consisting of the remainder of Las Picúas (768.5297 cuerdas). USI was not a party to the suit, of which it received no notification. The Secretary of Justice deposited $749,050.00 as estimated just compensation for the 768.5297 cuerdas, which USI contends is an unreasonably small amount, and $118,400.00 for the 9.4715 cuerdas that had been held by Continental Tennis.

In July 1989, the Superior Court presiding over the eminent domain case denied delivery of the property on the grounds that the government's theory, which presumed illegality of segregation and the structures built, was invalid, and that the disparity between the amounts paid per cuerda for the large parcel and the Continental Tennis parcel was too great. The Court ordered an amendment of the pleadings to join all persons listed in the Registry as owners as well as an appraisal of all the buildings. Subsequent to this ruling, the Governor of Puerto Rico did not reappoint the presiding judge. USI has alleged that this represents a gross example of judge shopping.

USI's complaint pleads four counts. Count I is brought against all the defendants for declaratory judgment regarding the constitutionality of § 6.04 of Regulation 13 and the validity of the segregation of Las Picúas. USI contends that the regulation is vague, overbroad, oppressive, arbitrary, and overly restrictive, all in violation of the fifth and fourteenth amendments to the U.S. Constitution. Specifically, USI contends (i) that the regulation contains a flat prohibition against any type of segregation of land classified as floodable, which does not advance a valid state interest and (ii) that it is beyond the scope of its enacting legislation, whose purpose was to avoid loss of lives and property and to control construction. USI charges that the flat prohibition leaves it without any economic use of property and is in effect a taking without just compensation.

Count II is brought against all of the defendants and seeks a declaratory judgment regarding the judgment in the Federación case. USI contends that since the case did not include all of the owners of the segregated parcels, who were indispensable parties, the judgment should be declared void pursuant to Rule 60(b)(4) of the Federal Rules of Civil Procedure.

Count III is brought against all the defendants, except the Federación, for violations of USI's civil rights under 42 U.S.C. § 1983 based on their alleged (i) deprivation of USI's property without due process through the retroactive application of Regulation 13 and other related regulations; (ii) arbitrary actions in approving the segregation of Las Picúas then rescinding the approval; (iii) initiation of the eminent domain case without notifying USI; (iv) discrimination against USI by depositing as just compensation for the bulk of Las Picúas amount so much less per cuerda than that given to Continental Tennis for its property; (v) political discrimination in attacks against USI in the press and thru administrative proceedings; and (vi) arbitrary failure to recognize the segregation of Las Picúas. USI asserts that it "has no other adequate available remedy to redress the violation of its federal constitutional rights and any possibility of redress in the

local court system is not possible in view of political, unethical, and callous manipulation by the government of the local judiciary." Verified Complaint ¶ 87, p. 20.

Count IV is brought against all the defendants and the interpleader defendants. It seeks a determination of the rights of the parties to Las Picúas and the monies paid for it. It also seeks an injunction pursuant to Rule 22 and 28 U.S.C. § 2361 restraining the defendants from instituting or prosecuting any court or administrative proceeding involving Las Picúas until further order of this Court.

## II. Discussion

### A. *The Interpleader Action—Count IV*

We begin at the end, with a consideration of the validity of plaintiff's interpleader action. An interpleader action may be brought pursuant to either Rule 22 of the Federal Rules of Civil Procedure or 28 U.S.C. § 1335 where two or more adverse parties are claiming or may claim money, property, or other benefits held by a third party stakeholder. The two types of interpleader actions, although substantially identical, have certain procedural differences. Where the action is brought under Rule 22, subject matter jurisdiction must be based on the federal question or diversity of citizenship jurisdiction provisions of 28 U.S.C. §§ 1331 and 1332; therefore, in "rule" interpleader actions based on diversity, the amount in controversy must exceed $50,000.00 and the stakeholder must be diverse from all the defendants. In "statutory" interpleader actions, on the other hand, subject matter jurisdiction must meet requirements established independently in 28 U.S.C. § 1335—diversity of citizenship need only exist between two or more of the adverse claimants and the amount in controversy need only be $500.00; however, Section 1335 also requires that the stake be deposited with the Court or that an appropriate bond be posted.

In both types of actions, the Court has the power to enjoin state court actions that overlap the interpleader proceeding. In statutory interpleader actions, however, such injunctions are governed by 28 U.S.C. § 2361, which expressly allows a district court to enter an order restraining all claimants "from instituting or prosecuting any proceeding in any State or United States court affecting the property, instrument or obligation involved in the interpleader action until further order of the court." In rule interpleader actions, on the other hand, such injunctions are governed by the general antisuit injunction provision of 28 U.S.C. § 2283. 7 Wright, Miller & Kane, *Federal Practice and Procedure* Civil 2d § 1704 at 500 (West 1986) (footnote omitted).

■ Both types of interpleader actions are driven by the same basic purpose, however. They afford a party who fears that he will be exposed to the vexation of defending multiple claims to a limited fund or property that is under his control a procedure to settle the controversy and satisfy his obligation in a single proceeding. 7 Wright, Miller & Kane, *supra*, § 1704 at 500 (footnote omitted). The primary test for determining the propriety of an interpleader action, therefore, is whether the stakeholder legitimately fears multiple vexation directed against a single fund. *Id.* at 501. A corollary to this requirement is the prerequisite that two or more claimants be *adverse* to each other. *See* Fed.R.Civ.P. 22(1) (interpleader appropriate where claims against the stakeholder "are such that the plaintiff is or may be exposed to double or multiple liability"); 28 U.S.C. § 1335 (interpleader appropriate where "[t]wo or more adverse claimants ... are claiming or may claim to be entitled to ... money or property" in the stakeholder's custody or possession). This requirement is not met where the claims asserted are not against the same fund or the stakeholder may be liable to both claimants. 7 Wright, Miller & Kane, *supra*, § 1705 at 508–09.[4]

**4.** The First Circuit has stated that "[t]he threat of possible multiple litigation—not necessarily the likelihood of duplicative liability—justifies resort to interpleader." *Equitable Life Assur.*

In this case, USI fails to establish the existence of any adverse claims. It asserts that the Federación case exposes it to adverse claims by the interpleader defendants, who are claiming or will claim their rights to their land or to the money they paid to USI for their land, and the Puerto Rico Secretary of Justice and Director of the Expropriation Division, who are claiming that title to Las Picúas should pass directly to the Land Administration. USI further asserts that the eminent domain proceedings expose it to adverse claims because the amount deposited as just compensation is unjustly low and it is unclear how the money should be distributed among USI and the interpleader defendants. Finally, USI asserts that "[i]n either case, USI faces multiple claims from all the interpleader-defendants who bought from USI and will request the money that they paid to be returned with interest and damages." Plaintiff's Opposition at 24–25.

This last assertion can be disposed of most easily. While it is true that USI faces multiple claims from the interpleader defendants, none of these claims are adverse. Although each interpleader defendant may have separate claims arising out of the various sales of segregated parcels of Las Picúas, they will not assert rights arising out of the *same* parcel.

USI's assertion of adverse claims arising out of the eminent domain proceedings and the Federación case are also false since they presume that as a result of these cases the interpleader defendants will make claims either for their parcel of Las Picúas or for the money deposited as just compensation for their parcel. In support

of this presumption, USI has alerted the Court to the fact that "several interpleader-defendants have already filed counterclaims against USI in this case." Plaintiff's Opposition at 24. After reviewing the counterclaims filed in this case, the Court *has* concluded that they dictate a conclusion as to the validity of interpleader action; however, the conclusion is not the one suggested by USI.

Four separate counterclaims were filed in this case by the interpleader defendants.[5] Although tailored to fit particular facts of the individual interpleader's claim, each requests substantially the same recovery. They request that USI be found liable to the counterclaimants and be adjudged as owing *money* to each counterclaimant reflecting (i) amounts paid to USI for each parcel, with interest, (ii) amounts paid to improve the properties, (iii) amounts paid by the owners to protect the title USI failed to protect for them, (iv) loss of profits or increase in the market value of the property which the owner will not realize, and (v) loss of enjoyment of the property. None of the counterclaimants requests either a declaration of their ownership of a parcel of Las Picúas or the money deposited as just compensation for the parcel. Instead, several of the counterclaims contain as affirmative defenses assertions that the interpleader action should not be allowed because no multiple claims exist between the individual owners or between the owners and any entity other than USI itself. As a result, USI cannot sustain its burden of showing that adverse claims exist involving the interpleader defendants.

*Soc. v. Porter Englehart*, 867 F.2d 79, 84 (1st Cir.1989) (citing *Underwriters at Lloyd's v. Nichols*, 363 F.2d 357, 365 (8th Cir.1966) (interpleader statute designed not only to protect stakeholders from multiple liability but also to save them from expense of multiple litigation)). This does not mean, however, that a party can resort to interpleader whenever it faces the threat of a series of lawsuits arising out of a single act or occurrence. Instead, it suggests that a party resorting to interpleader need not make a threshold showing that the various claims of the interpleader defendants are valid and therefore will result in duplicative liability.

The party must show, however, that *if valid* the claims will result in duplicative liability. This is the *sine qua non* of interpleader.

**5.** Counterclaims were filed by M.T.M. 1078, Inc., Margarita Alegria, Antonio Moreda, Herman Carstens Trejo, Zaida Marrero López, Margrethe Milagros Marrero López, Lilliam Elizabeth Marrero López, Victor Hernández Lebrón, and Otilia Vicéns Vallejo on July 3, 1990, and by Waljomar, Inc., José Carrasquillo González and Josefina Toro Albino on July 12, 1990.

Defendants' motions to dismiss USI's interpleader action must therefore be GRANTED.[6]

### B. *Review of Superior Court Judgment—Counts I and II*

Two of the remaining Counts in USI's complaint are related. They request that this Court (i) declare Section 6.04 of Regulation 13 and its application in this case unconstitutional (Count I), and (ii) declare the judgment in the Federación case invalid for failure to include indispensable parties (Count II). In essence, they request that this Court review the decision of the Superior Court in the Federación case, as well as a constitutional defense that USI did not assert in that case, believing it reserved for review by this Court. The defendants have amassed a slew of arguments to support their contention that this Court is without authority to entertain these causes of action. They contend primarily (i) that this Court is without authority to review decisions of the highest court of Puerto Rico and (ii) that USI did not properly reserve its right to litigate its federal constitutional claims before this Court. In the alternative, they contend (ii) that this Court should give full faith and credit to the judgment in the Federación case; (ii) that the doctrines of res judicata and collateral estoppel bar relitigation of these issues; (iii) that this Court should refrain from hearing this action under the *Younger, Buford, Pullman,* and *Colorado River* abstention doctrines; and (iv) that this case is barred by the Eleventh Amendment and the Anti-Injunction Act. Because the Court disposes of this case based on defendants' primary grounds for dismissal, the alternative grounds will not be discussed.[7]

The first prong of defendants' primary argument for dismissal is based on their contention that USI failed to properly reserve its federal constitutional claims for review by this Court. USI asserts, in para-

graph 36 of its complaint, that in the Superior Court action it "expressly reserved all of its rights under the Constitution and laws of the United States, including its civil rights claims so that it could properly bring them before the Federal District Court for Puerto Rico." USI attempted to make this reservation pursuant to standards and procedures set forth in *England v. Louisiana State Board of Medical Examiners,* 375 U.S. 411, 84 S.Ct. 461, 11 L.Ed.2d 440 (1964), in which

> the [Supreme] Court held that, where a federal court remits a litigant asserting federal and state law claims to state court on abstention grounds for purposes of resolving or clarifying an issue of state law, the litigant is not required to litigate its federal claims in the state tribunal, but may reserve its right to return to the federal court on the federal issue at the conclusion of the state proceedings.

*Fuller Co. v. Ramón I. Gil, Inc.,* 782 F.2d 306, 312 (1st Cir.1986). The effect of an *England* reservation is to allow a federal litigant who has been sent to state court to obtain a determination on an issue of state law to return to federal court to obtain a determination of his claims based on federal law. As the First Circuit has explained, *England*

> permits a plaintiff who files a case in federal court *before state proceedings begin* to tell the state court that it wishes to litigate its federal claim in that *federal* court; it therefore permits the *federal* court to engage in *Pullman* (not *Younger*) abstention, a form of abstention that permits the federal court, in effect, to ask a state court to clarify a murky question of *state* law involved in the case, while permitting the plaintiff to *return* to the federal forum for determination of the federal question after the

---

**6.** In addition, each of the Cross-Claims and Counterclaims filed by the interpleader-defendants must also necessarily be DISMISSED.

**7.** The Court notes that defendants' alternative grounds involve several of the issues discussed by the First Circuit in *El Día v. Hernández Colón,* —— F.2d —— (1st Cir.1992). Although

these issues are not directly addressed in this Opinion and Order, the Court has nonetheless been mindful of Judge Selya's direction in *El Día* that courts should avoid review of the constitutionality of state actions when such review is requested through a declaratory judgment action.

state court has decided the issue of state law.

*Duty Free Shop, Inc. v. Administración de Terrenos de Puerto Rico*, 889 F.2d 1181, 1183 (1st Cir.1989) (citations omitted) (emphasis in original). Plaintiff's attempt at an *England* reservation was therefore ineffectual in this case. USI did not bring an action in this Court prior to the institution of the Commonwealth action; therefore, this Court obviously never abstained from hearing such a non-existent case. The situation presented in this case is very similar to that faced in *Fuller*. A litigant in Superior Court in Puerto Rico sought to have its federal rights vindicated in the local court while "purporting to reserve its right to federal review of [its federal constitutional] issue." 782 F.2d at 308. The litigant then attempted to have a federal district court hear its case through a declaratory judgment action. The circuit held that he could not properly do so, stating:

> *England* did not involve a *state* court litigant like Fuller who was seeking to reserve its federal claims for a federal tribunal. Rather, *England* involved a litigant who, suing first in federal court, was remitted by that court to a state court on abstention grounds. In order to make an *England* reservation, a litigant must establish its right to have its federal claims adjudicated in a federal forum by properly invoking the jurisdiction of the federal court in the first instance.

*Id.* at 308 (emphasis in original). In this case, therefore, where USI similarly failed to invoke the jurisdiction of the federal court in the first instance, its attempt to make an *England* reservation must fail.

■ Because of the unassailable application of the above law in this case, plaintiff has not even attempted to salvage its purported *England* reservation in its opposition to defendants' motions. Instead, it has suggested that this Court need not consider the propriety of the reservation. It contends that the decision in the Federación case need not be given any preclusive effect because of defects in the litigation. Based on this contention, USI then suggests that the issue of whether it properly

reserved issues from that litigation is irrelevant. The Court must reject this argument, however, since, based on the second prong of defendants' argument, it finds that grounds independent of the doctrines of res judicata and collateral estoppel exist which prohibit this Court from reviewing the Superior Court judgment in the Federación case.

In *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 44 S.Ct. 149, 68 L.Ed. 362 (1923), the Supreme Court held that no court of the United States other than the Supreme Court itself may entertain a proceeding to reverse or modify a judgment of a state appellate court. The decision was predicated on the section of the Judicial Code now set forth at 28 U.S.C. § 1257 which limits review of final judgments of the highest court of a State to the Supreme Court. The *Rooker* doctrine was largely forgotten during the 60 years following its creation. Bator, et al., *Hart and Wechsler's The Federal Courts and the Federal System* at 1632 (3d ed. 1988). It resurfaced, however, in *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983), in which the Supreme Court reaffirmed:

> a United States District Court has no authority to review final judgments of a state court in judicial proceedings. Review of such judgments may be had only in this Court.

*Id.* at 482, 103 S.Ct. at 1315. The effect of the *Rooker* doctrine is to provide an independent basis for prohibiting collateral attack on state court judgments. *The Federal Courts, supra*, at 1632. Two small hurdles need to be cleared before applying the constraints of the *Rooker* doctrine in this case. First, as applied in *Feldman*, the doctrine is based on 28 U.S.C. § 1257, which limits review of final judgments of the highest court of a State to the Supreme Court. Review of final judgments of the Supreme Court of Puerto Rico, on the other hand, are controlled by 28 U.S.C. § 1258. The two provisions have no substantive differences, however, and there appears to be no reasons why the *Rooker* doctrine should not be applied to cases in which litigants seek review in this District of final

decisions of the Supreme Court of Puerto Rico. Second, the decision which plaintiff seeks to have reviewed by this Court was issued by the Superior Court, not the Supreme Court of Puerto Rico. Since the Supreme Court declined review of the decision, however, it is in effect the final judgment of the highest court of Puerto Rico. As a result, the *Rooker* doctrine applies in full force in this case and defendants' motions to dismiss plaintiff's cause of action seeking review of the Federación decision must be GRANTED.[8]

■ In *Feldman*, however, the Supreme Court, after holding that *Rooker* compels dismissal of an action in district court to review a state court judgment, stated that the same district court *did* have jurisdiction over the plaintiffs' "general challenge" to the constitutionality of the rule at issue. The Court recognized a significant difference "between seeking review in a federal district court of a state court's final judgment ... and challenging the validity of [the underlying] rule...." 460 U.S. at 483–84, 103 S.Ct. at 1315–16. As a result, the *Rooker* doctrine does not compel dismissal of USI's cause of action under Count I of its complaint, which requests review of the constitutionality of Section 6.04 of Regulation 13.

As defendants point out, however, dismissal of this cause of action is compelled by *Feldman*, which dictates that USI is not entitled to review of its federal constitutional claims in this court as a result of its decision not to adjudicate those claims in the Commonwealth courts. In a lengthy and deliberate footnote in *Feldman*, the Court, after closing off the possibility of direct review of the state court judgment in federal district court, considered other possible avenues for review—and found that there might be none. Considering first the possibility of Supreme Court review of the state judgment, the Court noted that "[i]t is possible that review of a state-court decision by this Court could be barred by a petitioner's failure to raise his constitutional claims in the state courts." *Feldman*, 460 U.S. at 482 n. 16, 103 S.Ct. at 1315 n. 16 (citing *Cardinale v. Louisiana*, 394 U.S. 437, 89 S.Ct. 1161, 22 L.Ed.2d 398 (1969) ("It was very early established that the Court will not decide federal constitutional issues raised here for the first time on review of state court decisions.")) The Court then considered a Fifth Circuit opinion in *Dasher v. Supreme Court of Texas*, 658 F.2d 1045 (1981), in which, relying on the above limitation on Supreme Court review, the court held that a *district* court may entertain a suit based on federal constitutional rights not asserted in a prior state proceeding. The Supreme Court stated, however:

> The Court of Appeals' reasoning in Dasher is flawed. As we noted in *Atlantic Coast Line R. Co. v. Locomotive Engineers*, 398 U.S. 281, 26 L.Ed.2d 234, 90 S.Ct. 1739 (1970), "lower federal courts possess no power whatever to sit in direct review of state court decisions." *Id.*, at 296, 26 L.Ed.2d 234, 90 S.Ct. 1739. If the constitutional claims presented to a United States District Court are inextricably intertwined with the state court's [judgment] ..., then the District Court is in essence being called upon to review the state-court decision. This the District Court may not do.
>
> Moreover, the fact that we may not have jurisdiction to review a final state-

---

**8.** Plaintiff's request for a review of the Superior Court judgment was made pursuant to Rule 60(b)(4), which provides that "the Court may relieve a party ... from a final judgment, order, or proceeding [if] ... the judgment is void." The more common type of action under Rule 60(b) grows out of a motion made "in the court and in the action in which the judgment was rendered." 11 C. Wright & A. Miller, *Federal Practice and Procedure* Civil § 2851 at 141. A saving clause in the rule states, however, that "[t]his rule does not limit the power of a court to entertain an independent action to relieve a party from a judgment, order, or proceeding...." Resort to such an independent action may be had only rarely, however, and then only under unusual and exceptional circumstances. *Id.* § 2868 at 239 (footnote omitted). It is not an affirmative grant of jurisdiction but instead merely allows a continuation of whatever power the court has to entertain an independent action. *Id.* at 237. As a result, since the Court is otherwise without power to review the Superior Court judgment in this case, Rule 60(b) does not provide an independent ground for jurisdiction.

court judgment because of a petitioner's failure to raise his constitutional claims in state court does not mean that a United States District Court should have jurisdiction over the claims. By failing to raise his claims in state court a plaintiff may forfeit his right to obtain review of the state-court decision in any federal court....

*Id.* Therefore, *Feldman* directs that where a district court finds that a federal constitutional claim not litigated in a prior state court proceeding was inextricably intertwined with state court's judgment, the court is without authority to entertain such a claim. *See Carbonell v. Louisiana Dept. of Health & Human Resources,* 772 F.2d 185, 189 (5th Cir.1985) (*"Feldman* directs the inquiry away from a mechanical classification of the relief requested or the cause of action, toward a realistic consideration of the nature of the underlying claim.")

Defendants assert that plaintiff's claims under Counts I, II, and III are all inextricably intertwined with the state court judgment. The Court notes that defendants' contention as to Count II is moot since the Court has already ruled that it is without power to hear that claim. As for Count I, it must be dismissed based on the *Feldman* limitation. Plaintiff's opposition, which as noted above challenges only defendants' alternative claims based on preclusion and abstention, does not address the application of *Feldman* in this case. Such an application is fairly straightforward, however. The judgment in the Federación case declared the segregation of Las Picúas null and void because it was in violation of Section 6.04 of Regulation 13. USI had argued that the provision was not applicable to the segregation of Las Picúas because it concerns only the building of structures in flood zones. It certainly could have, and should have, presented its claim that the provision is unconstitutionally vague, overbroad, and arbitrary. *Accord Feldman,* 460 U.S. at 482 n. 26, 103 S.Ct. at 1315 n. 26 (citations omitted) ("We have noted the competence of state courts to adjudicate federal constitutional claims.") The issue of the validity of the provision was an essential element of any considera-tion of its application to the segregation of Las Picúas and was therefore inextricably intertwined with the Superior Court judgment. Defendants' motions to dismiss this claim must therefore, based on the directives of *Feldman,* be GRANTED.

### C. Civil Rights Claim—Count III

■ Defendants have asked the Court to similarly dismiss USI's cause of action under Count III on the ground that the "due process claim" contained therein is also inextricably intertwined with USI's claims before the Superior Court. *See* Motion to Dismiss of Enrique Laborde, etc. at 12. This request appears to reflect a fundamental misunderstanding on the part of the defendant's of the essential nature of USI's civil rights claim.

In similar contexts, courts have dismissed civil rights claims filed subsequent to a state court action. *Carbonell,* for example, provides a useful comparison. In that case, the plaintiff, a state employee, was transferred from her employment allegedly in retaliation for filing an Equal Employment Opportunity Commission complaint. Upon refusing to accept her transfer, she was removed from her position. She appealed her dismissal to the Louisiana Civil Service Commission, which affirmed the removal. She then appealed this decision to the Louisiana Court of Appeal, which affirmed the Commission's decision. After her dismissal, plaintiff again amended her EEOC complaint to charge that her dismissal was retaliatory. After the EEOC declined to press the matter and issued a right-to-sue letter, she filed a suit in federal court under Title VII, and 42 U.S.C. §§ 1981 and 1983. 772 F.2d at 187. The trial court dismissed all of plaintiff's claims. She appealed this decision to the Fifth Circuit Court of Appeals, which held that the lower court was without jurisdiction to hear plaintiff's 1983 cause of action. In its opinion affirming the trial court, the circuit court first set out its fundamental concerns:

"A federal district court, as a court of limited original jurisdiction, lacks power to review, modify or nullify a final order

 

of a state court. Nor can a party, aggrieved by a judicial decision of a state's highest court, invest a lower federal court with jurisdiction by clothing his or her grievance in the garb of § 1983 and alleging that the decisions of the state court deprived him or her of constitutionally protected rights or interests.... A party seeking relief from such an allegedly unconstitutional action by a state court may seek review in only one federal court—the United States Supreme Court."

772 F.2d at 188 (quoting *Dasher v. Supreme Court of Texas*, 650 F.2d 711, 714-15 (5th Cir.1981), *rev'd on other grounds*, 658 F.2d 1045 (5th Cir.1981), *reh'g opinion disapproved District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 482 n. 16, 103 S.Ct. 1303, 1315 n. 16, 75 L.Ed.2d 206 (1983)). The court then stated that since the plaintiff's 1983 action asserted in the federal court the *same* employment discrimination claims previously asserted in the state court system, *Feldman* dictated that the lower federal court was without jurisdiction to entertain the claim.

USI's claims in Count III of its complaint do not present the same problem. USI's civil rights claims are independent of the issues litigated before the Superior Court. The Superior Court judgment ruled on the application of various Puerto Rico laws and regulations to the segregation and sale of Las Picúas. Any attempt by USI to have this Court review those issues—for example its claims under Counts I and II—must be rejected. USI's claim under Count III, on the other hand, seeks a ruling by this Court concerning the *conduct* of various government officials both during and prior to the institution of the local court actions. As such, it does not present this Court with the opportunity to sit in review of the Superior Court; it does not seek that this Court review issues inextricably intertwined with the Superior Court judgment; it is therefore not barred by *Feldman*. Defendants' motions to dismiss this cause of action on the jurisdictional grounds asserted is therefore DENIED.

By misperceiving USI's civil rights claim, defendants have in effect failed to make a valid motion to dismiss the cause of action. The Court recognizes, however, that grounds may otherwise exist to dismiss the claim. Therefore, the Court hereby GRANTS the defendants thirty (30) days from the issuance of this Opinion & Order to file any supplemental motions to dismiss USI's claim under Count III.

IT IS SO ORDERED.